# UNITED STATES *v.* JIN FUEY MOY.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF PENNSYLVANIA.

No. 525.  Argued December 7, 1915.—Decided June 5, 1916.

A statute must be so construed, if fairly possible, as to avoid not only
the conclusion that it is unconstitutional, but also grave doubts upon
that score. *United States* v. *Delaware & Hudson Co.*, 213 U. S. 366.

This court cannot assume to know judicially that no opium is produced
in this country; nor is it warranted in so assuming when construing
a statute itself purporting to deal with producers of that article.

When Congress contemplates the production of an article within the
United States, this court must construe the act on the hypothesis
that such production takes place.

An attempt of Congress to make possession of an article—in this case
opium—produced in any of the States a crime, would raise the
gravest question of power. *United States* v. *De Witt*, 9 Wall. 41.

In construing a statute which calls itself a registration or taxing act
and does not purport to be in execution of a treaty and which contains
a provision not required by any treaty, a grave doubt arises whether
such a statute is entitled to the supremacy claimed for treaties on
the ground that it does in effect carry out existing treaty obligations
on the general subject of both treaty and statute.

While the Opium Registration Act of December 17, 1914, may have a
moral end, as well as revenue, in view, this court, in view of the grave
doubts as to its constitutionality except as a revenue measure, con-
strues it as such.

Every question of construction is unique, and an argument that might
prevail in one case may be inadequate in another.

Only definite words will warrant the conclusion that Congress intended
to strain its powers, almost, if not quite, to the breaking point, to
make a great proportion of citizens *prima facie* criminals by mere
possession of an article.

The words "any person not registered " in § 8 of the Opium Registra-
tion Act of 1914 do not mean any person in the United States, but
refer to the class dealt with by the statute—those required to register
—and one not in that class is not subject to the penalties pre-
scribed by the statute.

225 Fed. Rep. 1003, affirmed.

*Mr. Assistant Attorney General Wallace,* with whom *Mr. William C. Herron* was on the brief, for the United States:

Section 8 of the act should not be restricted to those persons who are required to register and to pay the tax. *United States* v. *Portale,* 235 U. S. 27.

The decision of the court below goes only to the construction and not the constitutionality of the act; hence, the only question open on this writ of error is that of the construction of the act. *United States* v. *Barber,* 219 U. S. 72; *United States* v. *Keitel,* 211 U. S. 370; *United States* v. *Mescall,* 215 U. S. 31; *United States* v. *Portale,* 235 U. S. 31; see also *United States* v. *Barnow,* 239 U. S. 74; *United States* v. *Blunt* (Nor. Dist. Ill., not yet reported); *United States* v. *Brown,* 224 Fed. Rep. 135; *United States* v. *Wilson,* 225 Fed. Rep. 82; *United States* v. *Woods,* 224 Fed. Rep. 278.

The act is not exclusively a revenue measure, but is also one to comply with treaty obligations; see Treaty of 1912 and President's message of April 21, 1913.

The bill originated from the State, and not the Treasury, department.

The two acts of January 27, 1914, and this act were all enacted to comply with the treaty; see President's message of August 9, 1913. The Harrison Act was to cure conditions existing just before the passage of this bill.

The assertion that the acts were not passed pursuant to any treaty is erroneous as reports of committees show that purpose. Even without them, however, the court could not infer that revenue was the sole reason for the bill.

The act, particularly § 8, is not limited to those required to register.

The constitutionality of the act is not here involved, nor is the constitutional reading of the act a feature. Considerations favor the Government's reading e. g., contrast of language in § 1 from that in § 8 and contrast of language in § 1 from that in § 4.

Without such contrast, some could not read the words "required to register" into § 8.

The language of § 8 is self-interpreting.

Specific exceptions show the act is not so limited.

The reading of defendant in error emasculates the act.

A draftsman seeking to accomplish the Government's theory of the act would have so worded it; see Lapina v. Williams, 232 U. S. 78; Newell v. People, 7 N. Y. 9, 97; Prigg v. Pennsylvania, 16 Pet. 539, 612; United States v. Bennett, 232 U. S. 304; United States v. Goldenburg, 168 U. S. 95; United States v. Portale, 232 U. S. 27, 30; Black on Const. Law, § 49.

The Harrison law is meant to comply with treaty obligations. It is valid as in aid of the treaty.

This act is a legitimate regulation in aid of a proper subject of treaty-making power. Exports and imports are such a proper subject as is also interstate movement, manufacture, and jobbing of the drug, as all are reasonably related to the treaty object.

In support of these contentions see Adams v. New York, 92 U. S. 585; Baker v. Portland, 5 Sawy. 566; Carneal v. Banks, 10 Wheat. 181; C., B. & Q. Ry. v. Drainage Comm'rs, 200 U. S. 561; Chirac v. Chirac, 2 Wheat. 259; Clerke v. Harwood, 3 Dall. 342; Compagnie Francaise v. Brd. of Health, 186 U. S. 380; Dick v. United States, 208 U. S. 340; Downes v. Bidwell, 182 U. S. 244, 313; Geofroy v. Riggs, 133 U. S. 258; Gibbons v. Ogden, 9 Wheat. 1; Hauenstein v. Lynham, 100 U. S. 483; Hughes v. Edwards, 9 Wheat.

489; *In re Ah Chung,* 6 Sawy. 451; *In re Parrott,* 1 Fed.
Rep. 481; *In re Ross,* 140 U. S. 453; *License Cases,* 5 How.
504; *Leisy* v. *Hardin,* 135 U. S. 100; *McDermott* v. *Wisconsin,* 228 U. S. 115; *Mackenzie* v. *Hare,* 239 U. S. 299;
*Maiorano* v. *R. R. Co.,* 213 U. S. 268; *Mobile, J. & K.
C. R. R.* v. *Turnipseed,* 219 U. S. 35; *New York* v.
*Miln,* 11 Pet. 102; 22 Ops. A. G. 214; *Passenger Cases,*
7 How. 283; *Patsone* v. *Pennsylvania,* 232 U. S. 138;
*Queue Cases,* 5 Sawy. 552; *Succession of Robasse,* 49 La.
Ann. 1405; *Tellefsen* v. *Fee,* 168 Massachusetts, 188;
*United States* v. *43 Gals. Whisky,* 93 U. S. 188; *United
States* v. *Portale,* 235 U. S. 27; *Ware* v. *Hylton,* 3 Dall.
199; *Weber* v. *Freed,* 239 U. S. 325; *Worcester* v. *Georgia,*
6 Pet. 515; *Wyman, Petitioner,* 191 Massachusetts, 275;
Anderson on Treaty Making Power; Devlin on Treaty
Power; Calhoun on the Constitution; III Elliott's Debates;
I & II Farrand; Federalist, No. 22, p. 134; Moore's Dig.
of Int. Law, Vol. 5, p. 178; 1 Richardson's M. & P. of the
Presidents; Tucker on Const. Law.

*Mr. H. Ralph Burton* and *Mr. Levi Cooke,* with whom
*Mr. George X. McLanahan* and *Mr. William Strite Mc-
Dowell* were on the brief, for defendant in error:

Acts of Congress must be construed to avoid absurdities.
The Harrison Drug Act does not apply to mere consumers
or possessors.

The words "any person" in § 8 can only apply to the
persons upon whom the act intended to operate; to wit:
those mentioned in title and previous sections.

There is no basis for argument that such words should
be construed to mean "every other person."

Section 8 is only intended "to create a statutory rule of
evidence"; it is only auxiliary to § 1 and it does not enlarge the class of unlawful acts.

Presumed crime cannot be the basis of valid legislation
and by judicially determining a certain drug to be an "out-

law of commerce " proceed to punish every person who touches or possesses it.

The act was not passed pursuant to treaty obligations or under power to regulate commerce. *United States* v. *Portale*, 235 U. S. 27, does not furnish a rule for interpretation of the act in question.

The act is a revenue act and cannot apply by construction to a class of persons who are not permitted to comply therewith or otherwise affect the revenue, but is limited in scope to requiring persons specified to register and pay the tax imposed; requiring the use of official order forms upon which a tax is imposed; requiring a record to be kept, and certain provisions and authorized regulations complied with to prevent evasion of the tax, or to aid in detection and proof of violations of said act; regulating said drugs in interstate commerce.

The act must be construed so as not to violate the constitution, if possible.

It is a revenue act and in so far as it is, it does not violate the Constitution, but to construe said act as a police regulation to suppress the traffic in opium and other drugs, within the several States, would be to render it unconstitutional.

The presumption is against unwarranted exercise of legislative authority.

In this case the Government seeks to amend the act by construction and by adding additional purposes and thus including other persons.

It sets up an intention of Congress different from the plain and ordinary meaning of words used.

It makes presumption of "No legitimate occasion for possession of said drugs " and asks conviction under said presumption.

The Government is trying to introduce into modern jurisprudence the ancient and dishonored custom of "outlawry."

Section 8 prescribes and punishes a crime and therefore partakes of the nature of a penal act, instead of a revenue act; see *Andrew* v. *United States*, 2 Story, 203; *Granada County Supervisors* v. *Brogden*, 112 U. S. 261; *Hadden* v. *Collector*, 5 Wall. 107; *Martin* v. *Ford*, 1 Term Rep. 101; *Parsons* v. *Bedford*, 3 Pet. 433; *United States* v. *Brown*, 224 Fed. Rep. 135; *United States* v. *De Witt*, 9 Wall. 41; *United States* v. *Kirby*, 7 Wall. 482; *United States* v. *Jin Fuey Moy*, 225 Fed. Rep. 1003; *United States* v. *Wilson*, 225 Fed. Rep. 82; *United States* v. *Woods*, 224 Fed. Rep. 278.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an indictment under § 8 of the act of December 17, 1914, c. 1; 38 Stat. 785, 789. It was quashed by the District Court on the ground that the statute did not apply to the case. 225 Fed. Rep. 1003. The indictment charges a conspiracy with Willie Martin to have in Martin's possession opium and salts thereof, to wit, one dram of morphine sulphate. It alleges that Martin was not registered with the collector of internal revenue of the district, and had not paid the special tax required; that the defendant for the purpose of executing the conspiracy issued to Martin a written prescription for the morphine sulphate, and that he did not issue it in good faith, but knew that the drug was not given for medicinal purposes but for the purpose of supplying one addicted to the use of opium. The question is whether the possession conspired for is within the prohibitions of the act.

The act is entitled "An Act to provide for the registration of, with collectors of internal revenue, and to impose a special tax upon all persons who produce, import, manufacture, compound, deal in, dispense, sell, distribute, or give away opium or coca leaves, their salts, derivatives, or preparations, and for other purposes." By § 1 the persons mentioned in the title are required to register, and to pay

a special tax at the rate of $1 per annum, with certain exceptions, and. it is made unlawful for the persons required. to register to produce, etc., the drugs without having registered and paid the special tax. All provisions of law relating to special taxes are extended to this tax. By § 2 it is declared unlawful for any person to sell or give away the drugs mentioned without a written order, provided for, excepting deliveries by physicians, &c., or on their order, and certain other cases. Then after provision for returns it is made unlawful by § 4 for any person who shall not have registered and paid the special tax to send, carry or deliver the drugs in such commerce as Congress controls, again with exceptions. By § 6 preparations containing certain small proportions of the drugs are excluded from the operation of the act, under conditions. By § 7 internal revenue tax laws are made applicable, and then comes. § 8 under which the indictment is framed.

By § 8 it is declared unlawful for 'any person' who is not registered and has not paid the special tax to have in his possession or control any of the said drugs and 'such possession or control' is made presumptive evidence of a violation of this section and of § 1. There is a proviso that the section shall not apply to any employee of a registered person and certain others, with qualifications, or to the possession of any of the drugs which have been prescribed in good faith by a physician registered under the act, and to the possession of some others. And finally it is provided that the exemptions need not be negatived in any indictment, etc., and that the burden of proving them shall be upon the defendant. The district judge considered that the act was a revenue act and that the general words 'any person' must be confined to the class of persons with whom the act previously had been purporting. to deal. The Government on the other hand contends that this act was passed with two others in order

to carry out the International Opium Convention; 38 Stat., Part 2, 1929; that Congress gave it the appearance of a taxing measure in order to give it a coating of constitutionality, but that it really was a police measure that strained all the powers of the legislature and that § 8 means all that it says, taking its words in their plain literal sense.

A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score. *United States* v. *Delaware & Hudson Co.*, 213 U. S. 366, 408. If we could know judicially that no opium is produced in the United States the difficulties in this case would be less, but we hardly are warranted in that assumption when the act itself purports to deal with those who produce it. Section 1. Congress, at all events, contemplated production in the United States and therefore the act must be construed on the hypothesis that it takes place. If opium is produced in any of the States obviously the gravest question of power would be raised by an attempt of Congress to make possession of such opium a crime. *United States* v. *De Witt*, 9 Wall. 41. The Government invokes Article VI of the Constitution, that treaties made under the authority of the United States shall be the supreme law of the land. But the question arises under a statute not under a treaty. The statute does not purport to be in execution of a treaty but calls itself a registration and taxing act. The provision before us was not required by the Opium Convention, and whether this section is entitled to the supremacy claimed by the Government for treaties is, to say the least, another grave question, and, if it is reasonably possible, the act should be read so as to avoid both.

The foregoing consideration gains some additional force from the penalty imposed by § 9 upon any person who violates any of the requirements of the act. It is a fine of not more than $2,000 or imprisonment for not more than

five years, or both, in the discretion of the court. Only
words from which there is no escape could warrant the
conclusion that Congress meant to strain its powers
almost if not quite to the breaking point in order to make
the probably very large proportion of citizens who have
some preparation of opium in their possession criminal or
at least *prima facie* criminal and subject to the serious
punishment made possible by § 9. It may be assumed
that the statute has a moral end as well as revenue in
view, but we are of opinion that the District Court, in
treating those ends as to be reached only through a revenue
measure and within the limits of a revenue measure, was
right.

Approaching the issue from this point of view we con-
clude that 'any person not registered' in § 8 cannot be
taken to mean any person in the United States but must
be taken to refer to the class with which the statute under-
takes to deal—the persons who are required to register by
§ 1. It is true that the exemption of possession of drugs
prescribed in good faith by a physician is a powerful
argument taken by itself for a broader meaning. But
every question of construction is unique, and an argument
that would prevail in one case may be inadequate in an-
other. This exemption stands alongside of one that saves
employees of registered persons as do §§ 1 and 4, and nurses
under the supervision of a physician &c., as does § 4, and
is so far vague that it may have had in mind other persons
carrying out a doctor's orders rather than the patients.
The general purpose seems to be to apply to possession
exemptions similar to those applied to registration. Even
if for a moment the scope and intent of the act were lost
sight of the proviso is not enough to overcome the dom-
inant considerations that prevail in our mind.

*Judgment affirmed.*

MR. JUSTICE HUGHES and MR. JUSTICE PITNEY dissent.