UNITED STATES v. JIN FUEY MOY.

(District Court, W. D. Pennsylvania. January 19, 1918.)

No. 89.

1. POISONS ⬥2—HARRISON ANTE-NARCOTIC ACT—CONSTITUTIONALITY.
Harrison Anti-Narcotic Act Dec. 17, 1914 (Comp. St. 1916, §§ 6287g-6287q), was within the constitutional powers of Congress, and is valid.

2. POISONS ⬥9—VIOLATION OF ANTI-NARCOTIC ACT—INDICTMENT.
Indictment under Harrison Anti-Narcotic Act Dec. 17, 1914, § 2 (Comp. St. 1916, § 6287h), charging that defendant did sell, barter, exchange, and give away narcotic drugs, contrary to its provisions, *held* sufficient.

3. POISONS ⬥4—ANTI-NARCOTIC ACT—CONSTRUCTION—"SELL, BARTER, EXCHANGE, OR GIVE AWAY."
The provision of Harrison Anti-Narcotic Act Dec. 17, 1914, § 2 (Comp. St. 1916, § 6287h), making it a criminal offense to "sell, barter, exchange, or give away" certain narcotic drugs, except on orders on prescribed forms, does not include only cases where title to the prescribed drug was in him who undertook to dispense it.

Criminal prosecution by the United States against Jin Fuey Moy. On motion in arrest of judgment. Overruled.

E. Lowry Humes, U. S. Atty., and John M. Henry, Asst. U. S. Atty., both of Pittsburgh, Pa. John W. Dunkle and N. S. Williams, both of Pittsburgh, Pa., for defendant. Joseph Stadtfeld and R. P. Marshall, both of Pittsburgh, Pa., for Jos. Fleming & Son Co.

THOMSON, District Judge. The defendant was indicted under section 2 of the Harrison Anti-Narcotic Act (Act Dec. 17, 1914, c. 1,

38 Stat. 786 [Comp. St. 1916, § 6287h]), wherein it is charged that he did unlawfully sell, barter, exchange, and give away certain drams of morphine sulphate to different persons therein named. The indictment contains 20 counts, in form all the same, differing only in the names of the persons to whom the drugs were distributed and the amount dispensed. A motion to quash the indictment was made, alleging the unconstitutionality of the Harrison Act, and that the indictment as drawn does not charge the defendant with the commission of any offense prohibited by the act. The motion to quash was overruled, and the defendant tried and convicted on eight counts. The case is now before the court on a motion in arrest of judgment.

The reasons assigned in support of this motion are: First, the so-called Harrison Anti-Narcotic Act is unconstitutional and void; second, the so-called Harrison Anti-Narcotic Act is unconstitutional and void, so far as it does or attempts to control and regulate the practice of a physician; third, the indictment as a whole does not charge the defendant with the commission of any offense prohibited by the so-called Harrison Anti-Narcotic Act, or with the commission of an offense prohibited by any other law of the United States; fourth, there was no competent evidence submitted upon the part of the United States to sustain the verdict rendered by the jury.

[1] First, as to the constitutionality of the Harrison Act. It seems to me that this act should be read in the light of the previous legislation of Congress in restraint of the traffic in opium. The act approved February 9, 1909 (35 Stat. 614, c. 100, § 1 [Comp. St. 1916, § 8800]), provides:

"That after the first day of April, 1909, it shall be unlawful to import into the United States Opium in any form or any preparation or derivative thereof: Provided, that opium and preparations and derivatives thereof, other than smoking opium or opium prepared for smoking, may be imported for medicinal purposes only, under regulations which the Secretary of the Treasury is hereby authorized to prescribe, and when so imported shall be subject to the duties which are now or may hereafter be imposed by law."

The second section (section 8801) provides a maximum punishment of two years' imprisonment and $5,000 fine, of any person who shall fraudulently or knowingly import or assist in doing so, any opium or derivative thereof contrary to law, or who shall receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such drug after importation, knowing the same to have been imported contrary to law. It further provides that the drug shall be forfeited and destroyed, and that possession of such drug shall be deemed sufficient evidence, if unexplained, to authorize conviction of the person in possession thereof.

It is plain that Congress had the power to prohibit altogether the importation from foreign shores of this deadly narcotic, or they had the right to admit it under such restrictions as to its use, in protection of the public, as they might see fit to impose. And having done so, they may prescribe such regulations, penal or otherwise, as will effect the purpose intended; that is, to restrict its use to that for which alone it was admitted.

Every provision of the Harrison Act which deals with the use of the drugs in question shows that its use is restricted and intended to be confined to medicinal purposes only. This is in harmony with the law prohibiting its importation or use for any other purpose. It is a matter of common knowledge that no opium is produced in the United States; but this can perhaps not be assumed, when the act undertakes to deal with those who produce it. In the case of the United States v. Jin Fuey Moy, 241 U. S. 394, 36 Sup. Ct. 658, 60 L. Ed. 1061, Ann. Cas. 1917D, 854, the Supreme Court said:

"A statute must be construed, if fairly possible, so as to avoid, not only the conclusion that it is unconstitutional, but also grave doubts upon that score."

In the same opinion the court said:

"It may be assumed that the statute [the Harrison Act] has a moral end as well as revenue in view, but we are of opinion that the District Court, in treating those ends as to be reached only through a revenue measure and within the limits of a revenue measure, was right."

I am not convinced that the Congress in enacting the Harrison law exceeded its constitutional powers, and the motion in arrest of judgment on this ground cannot be sustained.

[2] Again, it is urged that the indictment as a whole does not charge the defendant with the commission of any offense prohibited by the Harrison Act. All the counts of the indictment, which are the same in form, are drawn under the second section of the act, and charge that the defendant was a practicing physician, and did unlawfully, willfully, etc., sell, barter, exchange, and give away certain drams of morphine sulphate to the person therein named, not in pursuance of a written order from such person on a form issued in blank for that purpose by the Commissioner of Internal Revenue. There is no possible question that the indictment thus far distinctly charges an offense under section 2, but the pleader, instead of stopping here, undertook to negative the exception of that section in relation to the distribution of drugs by a physician. It was not necessary for the pleader to do so, as the exception is entirely separated from the words of the section defining the offense. The rule of pleading in such case is clearly set forth in United States v. Cook, 17 Wall. 168, 21 L. Ed. 538. The first exception to section 2 is in these words:

"Nothing contained in this section shall apply (a) to the dispensing or distribution of any of the aforesaid drugs to a patient by a physician, dentist, or veterinary surgeon, registered under this act, in the course of his professional practice only"

—with certain requirements as to the keeping of records. As it was not necessary in this case for the pleader to negative the exception, the only question is: Is there anything in the subsequent words of the indictment that destroys the legal effect of the previous words, wherein the charge is specifically and legally made? After charging the offense as above quoted, the indictment proceeds:

"That is to say, that at the time and place aforesaid he, the said Jin Fuey Moy, did unlawfully and willfully, knowingly and feloniously sell, barter, ex-

change, give away, dispense and distribute to the party named twelve drams of morphine sulphate in manner following, to wit, that the said Jin Fuey Moy at the time and place aforesaid, did issue and dispense to the said party a certain prescription, a copy of which is as follows: [Then follows a copy of the prescription signed by the defendant, wherein the morphine sulphate is prescribed to be used as directed]—and the said party [naming him] was not then and there a patient of the said Jin Fuey Moy, and the said morphine sulphate was dispensed and distributed by the said Jin Fuey Moy not in the course of his professional practice only, contrary to the form of the act," etc.

The offense under section 2 is to sell, barter, exchange, or give away any of the prescribed drugs, except in pursuance of an order on the designated order form. The registered physician may successfully defend on the ground that he did not dispense or distribute the drug in question except to a patient in the course of his professional practice only. But this is a defense which must be set up by the physician, in order to escape the general requirements prescribed in section 2. The words in which exception (a) are negatived in the indictment must be read in the light of the words in which the offense is charged under the general provisions of section 2. It is alleged under the videlicet that the defendant "did unlawfully, willfully, knowingly, and feloniously sell, barter, exchange, and give away," with the additional words "dispense and distribute" to the party the drug in question. This is followed by giving the manner of the disposition of the drug, by the issuing of the prescription therein set forth. To this there can be but one meaning; that is, that the drugs were disposed of by means of the prescriptions. Then follow the words which take the physician out of the exception, namely, that the party was not a patient of the physician and the drug was dispensed and distributed by the physician not in the course of his professional practice only. It cannot be complained that the words "dispensed and distributed" are not used in the enacting clause of section 2. In order to escape the effect of the words "sell, barter, exchange, or give away," used in the enacting clause of section 2, the physician must show that the drugs so disposed of were dispensed or distributed by him to a patient in the course of his professional practice. I held before, and still hold, that the indictment sufficiently charges a violation of section 2 of the Harrison Act.

[3] It is insisted that to dispense or distribute the drugs on a prescription is not to sell, barter, exchange, or give them away. It is held in United States v. Stowell, 133 U. S. 1, 10 Sup. Ct. 244, 33 L. Ed. 555, that statutes enacted to prevent frauds upon the revenue are considered as enacted for the public good and to suppress a public wrong, and therefore, although they may impose penalties or forfeitures, are to be fairly and reasonably construed so as to carry out the intention of the Legislature. It could hardly be said that words of so broad import as "sell, barter, exchange, or give away," when standing together, were intended by Congress to be so narrowly and strictly construed as to include only those cases where title to the prescribed drug was in him who undertook to dispense or distribute it. The lawmakers were not concerned with the ownership of the drug, but with its unlawful distribution. It could matter

nothing to the poor victim in the fatal clutches of the drug habit, where title was to the narcotic which was thus dispensed to him, every grain of which brought him nearer to the grave. Whether the victim procured the drug from the hand of the physician, or through the druggist on an order or prescription of the physician, can matter nothing, unless we look blindly at the letter of the act, wholly forgetting its spirit and purpose.

In the last place, it is claimed that there was no competent evidence submitted on the part of the government to sustain the verdict of the jury. On the contrary, there was a superabundance of such evidence. Unless this section of the act is a dead letter, it would be hard to conceive a more flagrant case of its violation. The defendant seems to have obtained an extended and unenviable reputation as a dispenser of morphine sulphate. From Brooklyn to Chicago, from all the Lake cities, the victims of the drug habit came to Dr. Moy and procured the drugs. When we remember that the testimony showed that morphine sulphate is at least eight times as powerful and deadly as opium; that one-half grain is a large dose, and a grain a fatal dose to the nonuser; that there are 60 grains in one dram, and that the defendant time and again issued prescriptions for as much as 16 drams to one person, or 960 grains, enough to kill an entire regiment; that he issued, in the two years preceding the indictment, 11,687 prescriptions, calling for 15,796 drams, and in addition 43,200 one-half grain morphine tablets and 30,600 one-quarter grain tablets, we can have some conception of the magnitude of the defendant's unlawful business in the distribution of narcotics; and when we consider that for every dram prescribed he received $1, the commercial feature of the unlawful business becomes painfully and alarmingly apparent.

The motion in arrest of judgment is overruled.