## LAMENTO v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 30, 1925.)

No. 6619.

**1. Poisons ⬤═⇒9—Possession of narcotic drugs by addict in quantities suitable for personal use not presumptive evidence of offense.**

Provision of Harrison Anti-Narcotic Act, § 8 (Comp. St. § 6287n), that possession or control of narcotic drugs by one who has not paid the special tax shall be presumptive evidence of violation, applies only to persons required to register by section 1, as amended by Act Feb. 24, 1919 (Comp. St. Ann. Supp. 1919, § 6287g), and possession by an addict or consumer, who is not a retailer or distributor, in moderate quantities, such as a consumer or addict might naturally have for his use, is not presumptive evidence of violation of section 8 or section 1.

**2. Poisons ⬤═⇒9—Instruction that possession of small quantity of opium conclusively presumes guilt held erroneous.**

In prosecution for violation of Harrison Anti-Narcotic Act, § 1, as amended by Act Feb. 24, 1919 (Comp. St. Ann. Supp. 1919, § 6287g), and section 8 (Comp. St. § 6287n), conflicting evidence as to whether defendant was a retailer or distributor of narcotic drugs, or a mere addict or consumer, and as to whether he was in control or possession of opium seized, *held* to render erroneous court's instruction that possession of small quantity of opium created presumption that defendant was retailer.

**3. Criminal law ⬤═⇒1172(2) — Erroneous instruction on presumption of guilt as to one count held reversible error as to second count.**

In prosecution under Harrison Anti-Narcotic Act, § 1, as amended by Act Feb. 24, 1919 (Comp. St. Ann. Supp. 1919, § 6287g), and section 8 (Comp. St. § 6287n)' erroneous instruction on presumption of guilt from possession of unstamped narcotics, which probably led jury to conclude that, if they found defendant guilty of possession, they must find him guilty under the second count, charging purchase of narcotics, not in or from original stamped package, *held* to require reversal of conviction on second count.

**4. Criminal law ⬤═⇒1030(1), 1048, 1129(1)— Appellate courts may correct serious trial errors, though not challenged by objections, exceptions, or assignments of error.**

In criminal cases involving life or liberty of accused, appellate courts of United States, in interest of just enforcement of law, may correct serious trial errors, fatal to defendant's rights, although not challenged or reserved by objections, exceptions, or assignments of error.

In Error to the District Court of the United States for the Western District of Missouri; Albert L. Reeves, Judge.

Steno Lamento was convicted of violation of the Harrison Anti-Narcotic Act, and he brings error. Reversed and remanded.

W. G. Lynch, of Kansas City, Mo. (Henry C. Smith and Horace Guffin, both of Kansas City, Mo., on the brief), for plaintiff in error.

Charles C. Madison, U. S. Atty., and Samuel M. Carmean, Asst. U. S. Atty., both of Kansas City, Mo. (Charles S. Walden, Sp. Asst. U. S. Atty., and Harvey Roney, Asst. U. S. Atty., both of Kansas City, Mo., on the brief), for the United States.

Before SANBORN, Circuit Judge, and TRIEBER and PHILLIPS, District Judges.

SANBORN, Circuit Judge. The defendant in the District Court below was indicted, tried, and convicted under the first count for a violation of sections 1 and 8 (sections 6287g, 6287n, U. S. Compiled Statutes) of the Anti-Narcotic Act of December 17, 1914, as amended February 24, 1919 (Comp. St. Ann. Supp. 1919, § 6287g), in that about July 5, 1923, at Kansas City, Mo., being a retail dealer, he was in possession of about six ounces of smoking opium without having paid the special tax provided by that act, and, under the second count, for a violation of the same act in that he purchased on or about the same date six ounces of smoking opium, "the same not being in or from the original stamped package." He was sentenced to imprisonment in the United States penitentiary for five years on each of the two counts; the sentence on the second count to run concurrently with that on the first count.

The evidence for the government was to this effect: That on July 6, 1923, W. O. McDonald, special officer of the Law Enforcement Association assigned to assist the government narcotic officers, commissioned metropolitan police commissioner, Pugh, deputy for county marshal's office, and Bradshaw, narcotic agent of the Internal Revenue Service, assigned to the Kansas City division, under a search warrant entered and searched room 306 of the Cotter Hotel in Kansas City. McDonald testified that he looked over the transom and saw a woman, Ruby McDonald, lying on the bed with a pipe for smoking opium beside her, that he smashed the transom, and saw the defendant and the woman throwing things out of the window, and the defendant going out through the window. No other witness testified that the defendant was the man in that room at that time, and Ruby McDonald testified that he was not there, and he and four other witnesses testified to the same effect, and that at the time of the search and seizure he was at 707 Highland, the residence

of his fiancée. The officers mentioned testified that they found in this room 306 and on the roof of a building near the window in certain containers five or six ounces of smoking opium and a small box of pills sealed up, containing only a small amount, and that they also found the proper equipment for smoking opium, a pipe for that purpose, and an instrument they called the bowl for such a pipe, a lamp used in smoking opium, and a box containing gum opium prepared for smoking. Bradshaw testified that none of the opium which they found was in or from original stamped packages. Several witnesses testified that in conversation some months subsequent the defendant admitted that he was a smoker, that the equipment for smoking was his, that he was the man in the room who went out the window, and that he had at times peddled opium for a certain man whose name he gave. The defendant, on the other hand, testified that he never made any of these admissions, except that he was a smoker, an addict. There was no other evidence that he ever bought, sold, or possessed any opium or that he was a dealer or a distributor. There was no evidence that the defendant owned, lived in, or rented the building or the room, or the right to occupy it, or any part of it, where this opium was found.

In this state of the case counsel for the defendant complain of the charge of the court relative to each count of the indictment. At the opening of its charge the court properly stated to the jury that the court had nothing to do with the questions of fact in the case; that he might summarize the facts, but that this would be then merely for the purpose of aiding them in their deliberation; but they were not to be controlled by what the court might say as to any fact in the case. It then clearly stated to the jury the requirements by the government under the acts of Congress of paid revenue stamps on the containers or packages of the drugs used by manufacturers and sold to wholesalers, of the registration of such wholesalers, of their sales to the retailers exclusively in the original stamped packages, and of the retailer's registration. The court then reached the issue in the case whether or not, upon the evidence in the case, the charge in the first count of the indictment that the defendant was a retailer had been proved, and it charged as follows:

"Now, the retailer, when he is in possession of such drugs, he must possess two qualifications. In the first place, he must be registered with the government; and, in the second place, he must carry such drugs at all times in the original stamped package, so his sales must be made in the original stamped package, or from the original stamped package, and if any considerable quantity, for instance, the amount mentioned in the testimony, may be in possession of any person, it carries with it the conclusion that he is a retailer, and the obligation is upon him to register with the government, and it is of no consequence here as to whether he is actually registered or not. * * * Gentlemen, the court will charge you now that, if you believe and find from the testimony that the defendant was in possession of such drugs, namely, the opium that was offered and exhibited to you, on the 5th day of July, 1923, or at any time within three years before the 10th day of November, 1923, then, upon such testimony, you should find the defendant guilty as charged in the first count of the indictment."

In treating the question whether or not the defendant was the man in the room, the court charged:

"Now, gentlemen, there is but one question on that point for you; that is, to determine whether or not the man whom McDonald saw was in fact the defendant. If you believe that he was the defendant, and McDonald's statements are true, that it was the defendant he saw in the room at the time, and that he had in his possession the opium pipe and bowl and the jar of opium, then, gentlemen, if you believe that testimony, it will be your duty to return a verdict of guilty against the defendant on the first count, and, as I said to you heretofore, if you go further, and believe that he is guilty on the first count, then it will follow as a sequence that you will find him guilty on the second count of the indictment, because the law presumes, upon the testimony in this case, such packages being presented to you without any stamps upon them, and identified by the narcotic agents as being in that condition when they seized them in room 306, Cotter Hotel, then the law presumes that the defendant had made an unlawful purchase of such narcotic drugs; and, as I said, you should go no further, but find him guilty of unlawful purchase."

[1] Section 8 (section 6287n, Compiled Statutes) provides that "it shall be unlawful for any person not registered under the provisions of this act, and who has not paid the special tax provided for by this act, to have in his possession or under his control

any of the aforesaid drugs; and such possession or control shall be presumptive evidence of a violation of this section, and also of a violation of the provisions of section one of this act." But it is now, and has been since the decision of the Supreme Court in United States v. Jin Fuey Moy, 241 U. S. 394, 402, 36 S. Ct. 658, 60 L. Ed. 1061, Ann. Cas. 1917D, 854, on December 7, 1915, the settled construction of that section that the words "any person not registered," in section 8, cannot be taken to mean any person in the United States, but must be taken to refer to the class with which the statute undertakes to deal—the persons who are required to register by section 1 of the act (Comp. St. § 6287g). United States v. Jin Fuey Moy (D. C.) 225 F. 1003, 1005; Fyke v. United States, 254 F. 225, 227, 165 C. C. A. 513; United States v. Wong Sing, 260 U. S. 18, 20, 21, 43 S. Ct. 7, 67 L. Ed. 105; Johnson v. United States (C. C. A.) 294 F. 753, 754; Lewis v. United States (C. C. A.) 295 F. 678, 679; Hampton v. Wong Ging (C. C. A.) 299 F. 289, 290; Di Salvo v. United States (C. C. A.) 2 F.(2d) 222.

[2] Turning to section 1 (Comp. St. § 6287g), we find that, if the defendant was not a person who produced, imported, manufactured, compounded, dealt in, dispensed, sold, distributed, or gave away opium or coca leaves, or any compound, manufacture, salt, derivative, or preparation thereof, he was not a member of the class required to register, and was not one whose possession of the drugs was presumptive evidence of a violation of the act. If he was an addict or a consumer, and not a retailer or distributor, he was not required to register, and his possession of the drugs in moderate quantities such as a consumer or addict might naturally have in his possession was not presumptive evidence of a violation of section 8 or of section 1 of this act. In Bram v. United States, 282 F. 271, this court held, one judge dissenting, that the possession of 35 ounces of morphine and 75 ounces of cocaine, worth when sold unlawfully from $120 to $175 an ounce, aggregating $13,200 to $19,250, in the absence of any explanation of the defendant's possession, or any contention that he was a drug addict, was sufficient to sustain a conviction.

In the case in hand the amount of opium found did not exceed 7 ounces. The evidence was conclusive that the defendant was an addict, a smoker. There was no evidence that he owned or rented or lived in the room where Ruby McDonald was smoking the opium that was found; the amount was far from sufficient by itself to warrant the conclusion that the defendant was a dealer or a distributor. There was no direct evidence that he ever bought or sold any of the drugs; nothing but the indirect evidence of several witnesses of admissions of the defendant, which he denied, that he had at some times peddled opium for a man whose name he gave them. On the other hand, there was found in the room where the opium was discovered the equipment for smoking opium, and Ruby McDonald using it. So it is that the entire evidence on the issue of whether the defendant was a retailer or distributor, or a mere addict or consumer, was at least as consistent with the latter as with the former conclusion. The answer to that question, therefore, as well as to the doubtful question whether or not he was ever in control or possession of any of the opium was conditioned by conflicting evidence, which, if the court was of the opinion that it was sufficient to sustain a verdict against the defendant, it was its duty to submit to the jury, and we are unable to resist the conclusion that it was a fatal error for the court, without submitting both of those questions to the jury, to instruct them that if they concluded that the small quantity of the opium found was in the defendant's possession or control that fact carried with it the conclusive presumption that the defendant was a retailer and required them to find a verdict against him on the first count of the indictment.

[3] Counsel for the defendant insist that the vice of the trial under the first count was carried forward into the charge regarding the offense specified in the second count. Respecting that offense the court charged: "So, upon the testimony, if you find the defendant guilty of being in possession of such narcotic drugs at any of the times mentioned by me, namely, on the 5th day of July, 1923, or at any time within three years before the 10th day of November, 1923, then, the fact that you find him guilty under the first count of the indictment for being in possession of such drugs upon the testimony in this case, there is no necessity for deliberation on your part on the question of his innocence or guilt on the question of the other; he is guilty then of violation of the law under the second count of the indictment." Later and near the close of its instructions the court twice charged the jury that there had been in this case a violation of the law, that that matter need not concern them, need not call for one moment's con-

sideration, and that the only question for their consideration was whether or not, in view of the violation of the law, the defendant violated it.

Upon a careful review and consideration of the entire charge, which occupies eight printed pages of the record, it seems probable, almost certain, that the jury must have concluded from it that, if they found the defendant guilty under the first count of the indictment, they must find him guilty under the second count; and we are unable to resist the conclusions that the error in the trial under the first count must have so seriously affected the action of the jury under the second count that a fair and impartial administration of justice requires a new trial of the charges under each of the counts of the indictment.

[4] Counsel for the government called to our attention, and we have not failed to note and consider, the fact that no objections or exceptions were taken to the charge of the court at the trial regarding the questions which have been considered and counsel for the government have invoked the general rule that in ordinary cases the appellate courts will not consider errors later called to its attention. Robilio v. United States (C. C. A.) 291 F. 975, 980, 981. But there is an exception to this rule as well established, as just and equitable, as the rule itself. It is that in criminal cases, involving the life or liberty of the accused, the appellate courts of the United States may notice and correct, in the interest of a just enforcement of the law, serious errors in the trial of their cases, fatal to the defendant's rights, although these errors were not challenged or reserved by objections, exceptions, or assignments of error. Wiborg v. United States, 163 U. S. 632, 658, 16 S. Ct. 1127, 1197, 41 L. Ed. 289; Clyatt v. United States, 197 U. S. 207, 221, 25 S. Ct. 429, 49 L. Ed. 726; Crawford v. United States, 212 U. S. 183, 194, 29 S. Ct. 260, 53 L. Ed. 465, 15 Ann. Cas. 392; Weems v. United States, 217 U. S. 349, 362, 30 S. Ct. 544, 54 L. Ed. 793, 19 Ann. Cas. 705; Sykes v. United States, 204 F. 909, 914, 123 C. C. A. 205; August v. United States, 257 F. 388, 168 C. C. A. 428; Skuy v. United States (C. C. A.) 261 F. 320; Clark v. United States (C. C. A.) 265 F. 104; McNutt v. United States (C. C. A.) 267 F. 670; McWhorter v. United States (C. C. A.) 299 F. 780, 781.

Let the judgment below be reversed, and let the case be remanded to the court below, with instructions to grant a new trial.