BUTLER et al. v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
June 9, 1927.

No. 7628.

1. Conspiracy ⬚47—Evidence not showing defendants were registered or had paid special tax held insufficient to sustain conviction for conspiracy to sell or for selling morphine without registering and paying tax (Harrison Anti-Narcotic Act, § 1, as amended and re-enacted [Comp. St. § 6287g]).

Evidence showing that quantity of morphine sold by defendants did not have any tax-paid stamp, but failing to show whether defendants were registered or had paid special tax, held insufficient to sustain conviction for conspiracy in sale of morphine, or for sale without having registered or paid tax, in violation of Harrison Anti-Narcotic Act, § 1, as amended by Act Feb. 24, 1919, § 1006, and re-enacted by Act Nov. 23, 1921, § 1005, and Act June 2, 1924, § 705 (Comp. St. § 6287g), in that indictment charged commission of one offense, and evidence tended to show commission of entirely different offense.

2. Indictment and information ⬚120—Words descriptive of identity of that which is legally essential to charge cannot be stricken as surplusage.

Where words are employed in an indictment which are descriptive of the identity of that which is legally essential to charge in indictment, such words cannot be stricken out as surplusage.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Lee Butler (under the name of J. J. Butler) and another were convicted for conspiracy to sell morphine without having registered or paid special tax, and for the substantive offense of selling morphine without having registered or paid tax, and they bring error. Reversed.

Wright & Gill and Morris & Tant, all of Oklahoma City, Okl., for plaintiffs in error.

Roy St. Lewis, U. S. Atty., and Leslie E. Salter, Asst. U. S. Atty., both of Oklahoma City, Okl.

Before WALTER H. SANBORN and BOOTH, Circuit Judges, and DAVIS, District Judge.

BOOTH, Circuit Judge. Plaintiffs in error, Lee Butler (under the name of J. J. Butler) and P. C. Butler, were jointly indicted in the Western district of Oklahoma, charged in the first count with conspiring to commit an offense against the United States, to wit, the selling of morphine, without having registered with the collector of internal revenue or paid the special tax required, and charged in a second count with the substantive offense of selling morphine without having registered or paid the tax, all in violation of section 1 of the Harrison Anti-Narcotic Act (Act Dec. 17, 1914, 38 Stat. 785, amended February 24, 1919, 40 Stat. 1130, § 1006, re-enacted November 23, 1921, 42 Stat. 298, § 1005, and re-enacted June 2, 1924, 43 Stat. 328, § 705 [Comp. St. § 6287g]).

The charging part of the first count reads as follows:

"That heretofore, on or about December 1, 1925, at Oklahoma City, within the Western district of Oklahoma, and within the jurisdiction of this court, J. J. Butler and P. C. Butler, whose more full, true, and correct names are to the grand jurors unknown, did knowingly, willfully, unlawfully, corruptly, fraudulently, and feloniously conspire, combine, confederate, and agree together, and with divers other persons whose names are to the grand jurors unknown, to commit an offense against the United States, in violation of Act of December 17, 1914, as amended, to wit, the offense of dealing in and selling a derivative of opium, to wit, morphine, without having registered with the collector of internal revenue for the district of Oklahoma and paid the special tax as required by the Act of Congress of December 17, 1914, as amended by Act Feb. 24, 1919, c. 18, par. 1006, and re-enacted by Act Nov. 23, 1921, c. 136, par. 1005; the said defendants then and there being dealers in morphine, and persons required to so register and pay said special tax as aforesaid; that said conspiracy was continually in existence between the dates of December 1, 1925 and January 5, 1926."

An overt act was alleged as follows:

"(1) That on or about December 7, 1925, at and within Oklahoma county, Oklahoma, the defendants J. J. Butler and P. C. Butler sold and delivered to one W. T. Hunter one ounce of morphine without having registered with the collector of internal revenue for the district of Oklahoma, and paid the special tax as required by the Act of Congress of December 17, 1914, as amended, Act February 24, 1919, c. 18, par. 1006 and re-enacted, Act November 3, 1921, c. 136, par. 1005; the said defendants then and there being dealers

in morphine, and persons required to so register and pay said special tax as aforesaid."

The charging part of the second count reads:

"That heretofore, to wit, on or about December 7, 1925, at and within Oklahoma county, in the Western district of Oklahoma, and within the jurisdiction of this court, the defendants J. J. Butler and P. C. Butler, whose more full, true, and correct names are to the grand jurors unknown, then and there being, did then and there, without having registered with the collector of internal revenue for the district of Oklahoma, and paid the special tax as required by the Act of Congress of December 17, 1914, as amended, Act February 24, 1919, c. 18, par. 1006, and re-enacted Act November 23, 1921, c. 136, par. 1005, unlawfully, willfully, knowingly, and feloniously sell, barter, exchange, give away, and deliver to one W. T. Hunter, a certain derivative of opium, to wit, about one ounce of morphine; the said defendants then and there being dealers in morphine, and persons required to so register and pay said special tax as aforesaid."

Defendants were tried and found guilty on both counts. A motion in arrest of judgment was overruled. Both were sentenced on the first count to imprisonment for two years in the penitentiary at Leavenworth, Kan., and on the second count to imprisonment for five years in the penitentiary and to the payment of a fine of $500. The two sentences of confinement were ordered to run concurrently.

Among the assignments of error is one challenging the action of the court in overruling a motion for a directed verdict on each of the counts, and another challenging the verdict of the jury as not supported by the evidence, for the reason that there was no evidence that the defendants were of that class of persons required in the Harrison Anti-Narcotic Act to register and pay the tax. These two assignments of error will be discussed together.

The evidence tended to show that two narcotic government informers, on the evening of December 7, 1925, went to the place of residence of Lee Butler in Oklahoma City. One of them, Lashbrook, had a preliminary conversation with Butler, and finally introduced him to Hunter, the other informer. Hunter told Butler that he wished to purchase an ounce of morphine. After they had talked for some time, a sale was agreed upon, the price to be $80. Lee Butler by telephone called his brother, P. C. Butler. Shortly after his arrival, Hunter counted out $80, which

P. C. Butler took, and Lee Butler then directed Hunter to go with P. C. Butler. He did so, and was driven in an automobile to the outskirts of the city, where the automobile was stopped. P. C. Butler went into a field and dug up what afterward proved to be an ounce of morphine. This was delivered to Hunter; he tore open the wrapper, opened the can, examined it, and said it was all right. They then returned to the city. Later Hunter placed his initials on the can, and it was delivered to the narcotic agent. It was produced at the trial.

The evidence showed that the can did not have any tax-paid stamp upon it, either at the time of the trial or at the time it was purchased. There was no evidence on the question whether the defendants were registered under the act, or whether they had paid the special tax provided by the act. The court charged the jury on this phase of the matter as follows:

"It would be a good defense in a case of this kind if the defendants had registered with the collector of internal revenue and paid the special tax; that is, so far as the prosecution in this case is concerned. But if there is such a defense, and the defendants desired to present it, then it would devolve upon them to introduce evidence for the purpose of showing the registration and payment of the tax. They have not done so in this case, and you will take it that no such prerequisite is undertaken or performed by the defendants."

[1] Instead of thus charging the jury, the trial court, on the record before it, should, we think, have granted the motion for a directed verdict, on the ground that the evidence was wholly insufficient to sustain the allegations of the indictment. It must be borne in mind that section 1 of the Harrison Anti-Narcotic Act, as amended by the Act of February 24, 1919, covers two separate and distinct classes of offenses: First, offenses that may be committed only by a limited class of persons, viz. persons required to register under the provisions of the act; second, offenses that may be committed by any person. The first class of offenses is defined in the clause of section 1 (which we have designated A) reading as follows:

A: "It shall be unlawful for *any person required to register* under the provisions of this act to import, manufacture, produce, compound, sell, deal in, dispense, distribute, administer, or give away any of the aforesaid drugs without having registered and paid the special tax as imposed by this section." (Italics ours.)

The persons required to register and pay the special tax are specified as follows:

" * * * On or before July 1 of each year every person who imports, manufactures, produces, compounds, sells, deals in, dispenses, or gives away opium or cocoa leaves, or any compound, manufacture, salt, derivative, or preparation thereof, shall register with the collector of internal revenue of the district his name or style, place of business and place or places where such business is to be carried on, and pay the special taxes hereinafter provided."

The schedule of taxes is as follows:

"Importers, manufacturers, producers or compounders, $24 per annum; wholesale dealers, $12 per annum; retail dealers, $6 per annum; physicians, dentists, veterinary surgeons, and other practitioners lawfully entitled to distribute, dispense, give away, or administer any of the aforesaid drugs to patients upon whom they in the course of their professional practice are in attendance, shall pay $3 per annum."

The second class of offenses is defined in a later clause of the same section (which we have designated B) reading as follows:

B: "It shall be unlawful for *any person* to purchase, sell, dispense, or distribute any of the aforesaid drugs except in the original stamped package or from the original stamped package." (Italics ours.)

In the instant case the defendants were charged with being dealers and with selling the drug without having registered or paid the tax. Dealers under the act are either wholesale dealers or retail dealers. Section 1 of the act provides:

"Every person who sells or offers for sale any of said drugs in the original stamped packages, as hereinafter provided, shall be deemed a wholesale dealer."

"Every person who sells or dispenses from original stamped packages, as hereinafter provided, shall be deemed a retail dealer."

These are the only two classes of dealers required to register and pay the special tax. Though the defendants in the instant case were indicted as dealers, the indictment did not specify whether they were wholesale or retail dealers. The evidence failed to show that they were either, because it failed to show that they sold either in or from the original packages. The evidence tended to prove that they did sell in or from unstamped packages. The defendants might, therefore, properly have been indicted under the clause, designated B above, of section 1 of the act, making it an offense for anyone to sell except in or from the original stamped package.

The result is that the defendants were charged in the indictment with the commission of one offense, viz. that defined in the clause designated A; while the evidence tended to show the commission by them of an entirely different offense, viz. that defined in the clause designated B.

It is suggested that the presumption declared in section 8 of the act (Comp. St. § 6287n) helps out this situation of lack of proof. That section reads in part as follows: " * * * It shall be unlawful for any person not registered under the provisions of this act, and who has not paid the special tax provided for by this act, to have in his possession or under his control any of the aforesaid drugs; and such possession or control shall be presumptive evidence of a violation of this section, and also of a violation of the provisions of section one of this act."

But this provision of section 8 has reference only to persons who are required to register as provided in section 1 (United States v. Jin Fuey Moy, 241 U. S. 394, 36 S. Ct. 658, 60 L. Ed. 1061, Ann. Cas. 1917D, 854; Lamento v. United States, 4 F.(2d) 901 [C. C. A. 8]) ; and section 1 requires those persons only to register who are manufacturers, etc., or dealers; and dealers are only those persons who sell in or from original packages. As there was no proof that defendants belonged to the class of persons specified in section 1, the presumption had no application to them. The presumption, therefore, of section 8 does not help out the situation.

It is further suggested that the presumption declared in section 1 supplies the necessary evidence. That clause reads as follows: " * * * The absence of appropriate tax-paid stamps from any of the aforesaid drugs shall be prima facie evidence of a violation of this section by the person in whose possession same may be found."

This presumption in section 1 applies only to the penal provision which we have designated B, and has no application to the penal provision of section 1 which we have designated A. If this were not so, then the presumption would be irrational and void, for it would declare that possession by a person of unstamped drugs was prima facie evidence that he was a dealer in stamped drugs; a conclusion at once illogical and unreason-

able. Such a presumption would not meet the validity tests recognized generally by the courts. See Luria v. United States, 231 U. S. 9, 25, 34 S. Ct. 10, 58 L. Ed. 101; Mobile etc., R. Co. v. Turnipseed, 219 U. S. 35, 43, 31 S. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463; Bailey v. Alabama, 219 U. S. 219, 238, 239, 31 S. Ct. 145, 55 L. Ed. 191; Brightman v. United States, 7 F.(2d) 532 (C. C. A. 8). The situation in the instant case is therefore not helped out by the presumption in section 1 of the act.

The question of the correct analysis and construction of the above-quoted clauses of section 1 of the Harrison Anti-Narcotic Act has been exhaustively discussed by Judge Phillips in the opinion of this court in the recent case of O'Neill v. United States, 19 F. (2d) 322. The ruling in that case is controlling here.

[2] It has been suggested in the instant case that the allegations in the indictment that defendants were dealers, but had not been registered and had not paid the special tax, might be rejected as surplusage. We think this cannot be done, for the reason that a particular offense was charged in the indictment, and those allegations were a necessary part of the description of that particular offense, and the rule is that, where words are employed in an indictment which are descriptive of the identity of that which is legally essential to the charge in the indictment, such words cannot be stricken out as surplusage. United States v. Howard, Fed. Cas. No. 15,-403; United States v. Brown, Fed. Cas. No. 14,666; Rabens v. United States, 146 F. 978; Naftzger v. United States, 200 F. 494 (C. C. A. 8); United States v. Eisenminger (D. C.) 16 F.(2d) 816, 820.

Our conclusions are that the government failed to produce any evidence that defendants were persons who were required to register under section 1 of the act, or to pay the special tax, and that there was thus a failure to prove one of the essential elements of the particular offenses charged in the indictment.

We think the court erred in not granting the motion to direct a verdict for defendants. The judgment must therefore be reversed.

It is so ordered.