UNITED STATES of America, Plaintiff–Appellee,

v.

Mark R. STEWART a/k/a Mark Johnson, Defendant–Appellant.

No. 87–2922.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 4, 1988.
Decided Dec. 22, 1988.

Lori S. Klingman, Glencoe, Ill., for defendant-appellant.

Lisa Huestis, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUDAHY, COFFEY and MANION, Circuit Judges.

CUDAHY, Circuit Judge.

On September 16, 1987, Mark Stewart entered a plea of guilty to a two count indictment charging conspiracy (Count I) and possession of goods which had been stolen from an interstate shipment of freight (Count II). At the hearing on the change of plea, Stewart was informed by the district court that the total potential sentence he faced on the two offenses was 15 years imprisonment and a $500,000 fine. The written plea agreement which the defendant signed also informed him of this possible maximum sentence. Under that plea agreement, the government reserved the right to recommend any sentence it deemed appropriate. On November 16, 1987 the district court sentenced Stewart to 3½ years imprisonment on Count I and suspended the sentence on Count II, placing Stewart on probation for 5 years, the probationary period to run consecutive to the period of imprisonment. Stewart now appeals his sentence, claiming that he was entitled to be sentenced under the sentencing guidelines issued pursuant to the provisions of the Sentencing Reform Act of 1984 (SRA), Pub.L. 98–473, 98 Stat. 1837, 1987 (1984), which went into effect on November 1, 1987. Stewart claims that, by his calculation, the maximum sentence he could have received under the guidelines was 24 months.

The effective date of the Sentencing Reform Act was set out in § 235(a)(1), which provided for the Act to take effect on November 1, 1987. Pub.L. 98–473, Title II, Ch. II, § 235(a)(1), October 12, 1984, 98 Stat. 2031, as amended by Section 4 of Pub.L. 99–217, Dec. 26, 1985, 99 Stat. 1728.[1] The express language of this portion of the Act originally placed no apparent qualification on the November 1, 1987 effective date. Stewart implicitly relies on this provision setting the SRA's effective date, together with the following additional language in the SRA, to support his argument that he should have been sentenced pursuant to the guidelines:

The court, in determining the particular sentence to be imposed, shall consider—

(4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines that are issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(1) and *that are in effect on the date the defendant is sentenced.*

18 U.S.C. § 3553(a)(4) (Supp.1985) (emphasis supplied). Since the effective date of the Sentencing Reform Act was November 1, 1987, Stewart argues that the guidelines were in effect on November 16, 1988, the date he was sentenced, and that the above language directs that he be sentenced according to those guidelines.

In *United States v. Tex–Tow, Inc.*, 589 F.2d 1310, 1313 (7th Cir.1978), we stated:

There are two circumstances in which the court may look beyond the express language of a statute in order to give force to Congressional intent: where the statutory language is ambiguous; and where a literal interpretation would thwart the purpose of the over-all statutory scheme or lead to an absurd result.

(Quoting *International Telephone and Telegraph Corporation v. General Telephone & Electronics Corp.*, 518 F.2d 913, 917–18 (9th Cir.1975)) (citations omitted in original). Congress' clear intent was that the SRA would not apply to sentencing for offenses committed prior to its November 1, 1987 effective date. The Senate Report on § 235(a)(1), the provision establishing the effective date of the SRA, states:

*The title will apply to any offense or other event occurring on or after the effective date.* A sentence imposed before the effective date of the guidelines as to an individual imprisoned or on probation or parole on that date would not be affected by this title. *As to an offense committed prior to the effective date, the preexisting law will apply as to all substantive matters including the imposable sentence.*

1. More precisely, that provision provided for the Act to take effect "on the first day of the first calendar month beginning 36 months after the date of enactment (October 16, 1984)."

S.Rep. No. 98–225, 98th Cong., 2d Sess. 189 *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3372. As Judge Bua cogently observed in *United States v. Cooper*, 685 F.Supp. 179, 180 (N.D.Ill.1988), "[u]nfortunately, the 1984 Act itself did not articulate Congressional intent as lucidly as the Senate report did." In effect, Congress made a drafting mistake in failing to set out in clear statutory language the non-applicability of the SRA to offenses occurring prior to the SRA's effective date. This error created an ambiguous statutory framework. However, the clear Congressional intent reflected in the SRA's legislative history can help us resolve this statutory ambiguity in favor of the non-applicability of the SRA to offenses occurring prior to its November 1, 1987 effective date.

This approach also permits us to avoid an interpretation of the SRA which could "thwart the purpose of the over-all statutory scheme or lead to an absurd result," *Tex–Tow*, 589 F.2d at 1313, by raising serious and obvious *ex post facto* clause problems.[2] Under Bogden's interpretation, a defendant who committed a crime prior to the effective date of the Act could potentially receive a harsher sentence than the sentence that was authorized at the time he committed the offense. The *ex post facto* implications of such an interpretation are clear. Although Stewart contends that in his case there is no *ex post facto* problem (because he believes that he would receive a lighter sentence under the guidelines), he has apparently neglected to take into account other provisions of the SRA that would in all likelihood adversely affect him. The SRA established an entirely new and far-reaching system of sentencing of which the Sentencing Commission's guidelines are only a part. For example, under the new scheme, parole has been abolished; Stewart would therefore be required to serve his sentence in its entirety. 18 U.S.C. § 3624(a). Additionally, the amount of good time allowances he could receive under the new scheme is less than that to which he would be entitled under the old.[3] *See also United States v. Kelly*, 680 F.Supp. 119, 121 (S.D.N.Y.1988). Had Stewart considered these provisions of the Act instead of focusing solely on the length of the sentence suggested by the guidelines, the *ex post facto* problems with applying the guidelines even to his own case would no doubt have been more obvious to him. We need only look to Congress' clearly expressed intent that the SRA would apply only to offenses committed on or after the effective date in order to avoid the apparently unconstitutional interpretation urged upon us by Stewart. *See Rogers v. Loether*, 467 F.2d 1110, 1123 (7th Cir.1972), *aff'd*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), *quoting United States v. Jin Fuey Moy*, 241 U.S. 394, 401, 36 S.Ct. 658, 659, 60 L.Ed. 1061 (1916) ("A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score").

In addition, Congress has since amended the statute's effective date provision in order to dispel any doubt regarding the Act's applicability to defendants like Stewart. On December 7, 1987, section 235(a)(1) of the Sentencing Reform Act was expressly amended to provide that the provisions of the Act "shall apply only to offenses committed after the taking effect of [the Sentencing Reform Act]." Pub.L. 100–182, § 2(a), 101 Stat. 1266 (the Sentencing Act of 1987). The amendment was made in order to clarify definitively that the guidelines apply only to those defendants whose offenses were committed on or after November 1, 1987 and to avoid litigation challenging the Act on *ex post facto* grounds.

---

**2.** The two critical elements of an *ex post facto* violation are that the law be retrospective and that it disadvantage the offender affected by it. *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987).

**3.** Under the old system, Stewart would be eligible for seven days per month, or a total of 84 days per year of good time. 18 U.S.C. § 4161.

Under the SRA, the amount of good time available to Stewart would be limited to 54 days per year. 18 U.S.C. § 3624(b). Any attempt to apply the new provision's reduced good time allowance to Stewart would clearly violate the *ex post facto* clause. *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981).

Cong.rec. H10021 (daily ed. November 16, 1987) (remarks of Cong. Fish); *id.* at H10017 (section-by-section analysis). This amendment clarifying the meaning of the effective date of the SRA further supports our interpretation that Congress never intended, even with respect to the pre-amendment Act, for the SRA to apply to offenses committed prior to November 1, 1987. *See United States v. Horak,* 833 F.2d 1235, 1250 (7th Cir.1987); *United States v. Yancey,* 827 F.2d 83, 88 (7th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1239, 99 L.Ed.2d 437 (1988).

Stewart nonetheless argues that during the period between November 1, 1987 and December 7, 1987 (the date on which Congress expressly clarified the statute's effective date) the Act was ambiguous with regard to the effective date and that this ambiguity should be resolved in his favor. Despite this ambiguity, however, the principle of lenity invoked by Stewart does not require us to apply the guidelines to him where such a construction of the statute would defeat the obvious intention of Congress. *United States v. Drasen,* 845 F.2d 731, 738 (7th Cir.1988); *United States v. Kenngott,* 840 F.2d 375, 383–84 (7th Cir. 1987). Further, the general federal savings statute, 1 U.S.C. § 109,[4] preserves Stewart's sentence under the old statutory scheme in the absence of evidence of a clear legislative intent that the provisions of the SRA apply retroactively. *See United States v. Rewald,* 835 F.2d 215, 216 (9th Cir.1988). As we have already concluded, Congress' clear intent was, in fact, that the SRA *not* apply retroactively.

Moreover, Stewart's interpretation of § 3553(a)(4) ("the Court ... shall consider the guidelines ... that are in effect on the date the defendant is sentenced") is not supported by the legislative history of that section. According to the Senate Report, Congress intended for the Sentencing Commission to periodically review and revise the sentencing guidelines "to assure that they are the most sophisticated statements available and will most appropriately carry out the purposes of sentencing." S.Rep. No. 98–225, 98th Cong., 2d Sess. 77, *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182, 3260. Section § 3553(a)(4) was intended to make clear that, in light of the anticipated periodic revisions to the guidelines, "[t]he guidelines and policy statements to be applied are those in effect at the time of sentencing," reasoning that "[u]se of guidelines and policy statements since revised would only create significant administrative difficulties." *Id.* Therefore, the provision does not purport to require that once the guidelines are in effect they apply to all defendants not yet sentenced. Instead, the section was intended to establish that, in light of anticipated revisions in the guidelines from time to time, those guidelines in effect at the time the defendant is sentenced are to apply. Although it is highly unlikely that this portion of the Act could withstand scrutiny under the *ex post facto* clause in light of the Supreme Court's decision in *Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (retroactive application of Florida's sentencing guidelines violates *ex post facto* clause), the legislative history of this section nonetheless makes it clear that Stewart's interpretation of § 3553(a)(4) is mistaken.

In conclusion, we hold that, even as initially enacted, the Sentencing Reform Act of 1984 did not apply to defendants whose offenses were committed prior to November 1, 1987. Since Stewart committed his offenses well before the effective date of the Act, the sentencing guidelines do not

---

**4.** Section 109 of Title 1, United States Code, provides in pertinent part as follows:

The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

The savings statute applies to amendments to criminal statutes as well as to repeals, and serves to preserve Stewart's conviction and sentence under pre-SRA law. *See, e.g., United States v. Stillwell,* 854 F.2d 1045, 1047–48 (7th Cir.1988).

apply to him. Accordingly, his conviction and sentence are affirmed.