**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

DARREL DUANE GRISEL,
          *Defendant-Appellant.*

No. 05-30585

D.C. No.
CR-05-00116-JO

OPINION

Appeal from the United States District Court
for the District of Oregon
Robert E. Jones, District Judge, Presiding

Argued and Submitted En banc March 22, 2007
San Francisco, California

Filed June 5, 2007

Before: Mary M. Schroeder, Chief Circuit Judge,
Harry Pregerson, Stephen Reinhardt, Pamela Ann Rymer,
Andrew J. Kleinfeld, Michael Daly Hawkins,
A. Wallace Tashima, Susan P. Graber,
Kim McLane Wardlaw, Ronald M. Gould, Richard A. Paez,
Marsha S. Berzon, Richard C. Tallman,
Johnnie B. Rawlinson, and Carlos T. Bea, Circuit Judges.

Opinion by Judge Graber;
Dissent by Judge Bea

## COUNSEL

Kendra M. Matthews, Ransom Blackman LLP, Portland, Oregon, for the defendant-appellant.

Stephen F. Peifer, Assistant U.S. Attorney, Portland, Oregon, for the plaintiff-appellee.

Stephen R. Sady, Chief Deputy Federal Public Defender, Portland, Oregon, for the amicus curiae.

## OPINION

GRABER, Circuit Judge:

We took this case en banc primarily to reexamine the validity of *United States v. Cunningham*, 911 F.2d 361 (9th Cir.

1990) (per curiam). In *Cunningham*, we held that second-degree burglary under Oregon law is a categorical burglary offense under the analysis required by *Taylor v. United States*, 495 U.S. 575 (1990), for purposes of applying the Armed Career Criminal Act of 1984 ("ACCA"), 18 U.S.C. § 924(e). *Cunningham*, 911 F.2d at 363. We now hold that *Cunningham* was wrongly decided and expressly overrule it.

Defendant Darrel Duane Grisel pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Under the ACCA, a district court must sentence a defendant who violates § 922(g) and who has three prior convictions for violent felonies or serious drug offenses to a mandatory minimum of 180 months' imprisonment. 18 U.S.C. § 924(e)(1). The ACCA identifies "burglary" as a violent felony for purposes of the mandatory minimum enhancement. 18 U.S.C. § 924(e)(2)(B)(ii).

At Defendant's sentencing hearing, the government submitted judgments of conviction and indictments or informations for seven second-degree burglaries under Oregon law, Or. Rev. Stat. § 164.215(1), to which Defendant had pleaded guilty. Pursuant to *Cunningham*, the district court sentenced Defendant to 180 months' imprisonment. Defendant timely appealed, and we decided to hear the case en banc initially. *See* Fed. R. App. P. 35. We review de novo whether a prior conviction is a predicate felony under the ACCA. *United States v. Bonat*, 106 F.3d 1472, 1474 (9th Cir. 1997).

Antecedent to examining the substance of his prior convictions, Defendant argues that, procedurally, the government failed to satisfy the ACCA because it did not plead and prove beyond a reasonable doubt the sequence of his prior convictions. Essentially, his argument is twofold. First, Defendant urges that the doctrine of constitutional avoidance requires that we not apply the rule of *Almendarez-Torres v. United States*, 523 U.S. 224, 243-47 (1998), that prior convictions need not be alleged in an indictment, proved to a jury, or

admitted by a defendant, because recent Supreme Court cases have called into question its validity. Alternatively, Defendant argues that the date of an offense falls outside the prior-conviction exception. We are not persuaded by either part of his challenge.

**[1]** Under the doctrine of constitutional avoidance, "[a] statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score." *United States v. Jin Fuey Moy*, 241 U.S. 394, 401 (1916). "The doctrine seeks in part to minimize disagreement between the branches by preserving congressional enactments that might otherwise founder on constitutional objections." *Almendarez-Torres*, 523 U.S. at 238.

**[2]** But the Supreme Court already has considered and decided the very constitutional questions that arise from judicial determination of prior convictions during sentencing. When the Court has decided expressly that a practice is constitutional, there are no "grave doubts" about its constitutionality. *Almendarez-Torres* never has been overruled. To the contrary, its rule has been stated and applied repeatedly by the Supreme Court. In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Court expressed some doubt about whether *Almendarez-Torres* was correctly decided, but the Court still held that, "[*o*]*ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis added.) The Court likewise preserved the exception for prior convictions in *Blakely v. Washington*, 542 U.S. 296, 301 (2004); *United States v. Booker*, 543 U.S. 220, 244 (2005); *Cunningham v. California*, 127 S. Ct. 856, 864, 868 (2007); and, most recently, *James v. United States*, 127 S. Ct. 1586, 1600 n.8 (2007).

Defendant points to *Dretke v. Haley*, 541 U.S. 386 (2004), in support of his constitutional avoidance argument. In

*Dretke*, the Supreme Court tailored its holding in order to avoid a difficult constitutional issue—namely, reconsideration of *Almendarez-Torres*. *Id.* at 395-96. We reject Defendant's attempt to turn *Dretke* on its head by transforming the Court's refusal to overturn or ignore *Almendarez-Torres* into support for our doing so. The doctrine of constitutional doubt does not trump the principle of *stare decisis*. "[I]f a precedent of th[e] [Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to th[e] Court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (internal quotation marks omitted). The fact that the Supreme Court has expressed some ambivalence about its own jurisprudence does not give us the power to change it.

[3] In addition, we reject Defendant's assertion that the dates of his prior convictions are not a part of the "fact" of his prior convictions. When, as here, the face of the document demonstrating Defendant's prior conviction includes the date of the offense, the date is just as much a part of the plea as is the nature of the offense described on the face of the document.[1] Thus, the dates of Defendant's prior convictions were properly before the district court. The question remains whether his prior convictions qualify as predicate felonies under the ACCA.

[4] In *Taylor*, the Supreme Court established a method of analysis to determine whether a prior conviction is a predicate felony under the ACCA. Using a categorical approach, a court

---

[1]In so holding, we join the other circuits to have addressed the issue. *See United States v. Harris*, 447 F.3d 1300, 1303-05 (10th Cir. 2006); *United States v. Thompson*, 421 F.3d 278, 285-86 (4th Cir. 2005), *cert. denied*, 126 S. Ct. 1463 (2006); *United States v. Wilson*, 406 F.3d 1074, 1075 (8th Cir.), *cert. denied*, 126 S. Ct. 292 (2005); *United States v. Burgin*, 388 F.3d 177, 186 (6th Cir. 2004); *United States v. Morris*, 293 F.3d 1010, 1012-13 (7th Cir. 2002); *United States v. Santiago*, 268 F.3d 151, 156-57 (2d Cir. 2001).

"look[s] only to the fact of conviction and the statutory definition of the prior offense" to determine whether the prior conviction necessarily satisfies 18 U.S.C. § 924(e). *Taylor*, 495 U.S. at 602. If the state statute defines the offense more broadly than the federal statute, encompassing crimes both listed and not listed in § 924(e), a court may "go beyond the mere fact of conviction in a narrow range of cases." *Taylor*, 495 U.S. at 602. Under this modified categorical approach, a prior conviction established after a jury trial is a predicate felony "if the indictment or information and jury instructions show that the defendant was charged only with a [crime listed in § 924(e)], and . . . the jury necessarily had to find [the elements of the crime listed in § 924(e)] to convict." *Taylor*, 495 U.S. at 602. The Supreme Court later clarified that,

> [i]n cases tried without a jury, the closest analogs to jury instructions would be a bench-trial judge's formal rulings of law and findings of fact, and in pleaded cases they would be the statement of factual basis for the charge, shown by a transcript of plea colloquy or by written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea.

*Shepard v. United States*, 544 U.S. 13, 20 (2005) (citation omitted).

**[5]** In addition to establishing the categorical and modified categorical approaches, *Taylor* defined burglary for purposes of the ACCA because Congress had deleted the statutory definition when it amended the ACCA in 1986. 495 U.S. at 581-82; *see also James*, 127 S. Ct. at 1591 (discussing "the definition of burglary under ACCA that th[e Supreme] Court set forth in *Taylor*"). The Court in *Taylor* rejected the use of state statutory labels of crimes. The Court observed that "[t]he word 'burglary' has not been given a single accepted meaning by the state courts; the criminal codes of the States define burglary in many different ways," *Taylor*, 495 U.S. at 580, and

concluded "that 'burglary' in § 924(e) must have some uniform definition independent of the labels employed by the various States' criminal codes," *id.* at 592. The Court also rejected the common law definition of burglary. The Court reasoned that

> [t]he arcane distinctions embedded in the common-law definition have little relevance to modern law enforcement concerns . . . . [C]onstruing 'burglary' to mean common-law burglary would come close to nullifying that term's effect in the statute, because few of the crimes now generally recognized as burglaries would fall within the common-law definition.

*Id.* at 593-94. Consequently, the Court chose "not [to] read into the statute a [common law] definition of 'burglary' so obviously ill suited to its purposes." *Id.* at 594.

**[6]** Instead, the Court held that "a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 599. In the original version of the ACCA, Congress had defined burglary "as any felony consisting of entering or remaining surreptitiously within a building that is property of another with intent to engage in conduct constituting a Federal or State offense." *Id.* at 581 (internal quotation marks omitted). The Court's generic definition thus was "practically identical to the 1984 definition [in the original version of the ACCA] that, in 1986, was omitted from the enhancement provision [in the amended version of the ACCA]." *Id.* at 598.

**[7]** One difference between the deleted 1984 statutory definition and the Court's generic definition in *Taylor* was the substitution of the term "building or structure" for the term "building." Careful analysis makes clear, however, that this

difference was one of form, not substance. In using the term "building or structure," the Court encapsulated the common understanding of the word "building"—a structure designed for occupancy that is intended for use in one place.[2]

The Court explained its choice of terminology by citing Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 8.13 (1986), a treatise that surveys state and federal criminal codes. *Taylor*, 495 U.S. at 598; *see also James*, 127 S. Ct. at 1604 (Scalia, J., dissenting) ("[In *Taylor*,] we concluded that Congress meant by burglary the generic sense in which the term is now used in the criminal codes of most States. To determine that sense, we looked for guidance to W. LaFave & A. Scott, Substantive Criminal Law (1986) and the American Law Institute's Model Penal Code (1980)." (citation and internal quotation marks omitted)). Although the common law required "that the invaded structure be the dwelling house of another," LaFave & Scott, *supra*, § 8.13(c), "modern statutes typically describe the place as a building or structure," *Taylor*, 495 U.S. at 598 (internal quotation marks omitted) (quoting LaFave & Scott, *supra*, § 8.13(c)). As reflected in the criminal codes of most states, "building or structure" does not encompass "other places, such as all or some types of vehicles," including motor homes, and objects such as telephone booths. LaFave & Scott, *supra*, § 8.13(c) & nn.84-85. In other words, in the criminal codes of most states, the term "building or structure" does not encompass objects that could be described loosely as structures but that are either

---

[2]Webster's Third New International Dictionary defines "building" as

> a constructed edifice designed to stand more or less permanently, covering a space of land, usu[ally] covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure —distinguished from structures not designed for occupancy (as fences or monuments) and from structures not intended for use in one place (as boats or trailers) even though subject to occupancy.

Webster's Third New International Dictionary Unabridged 292 (1993).

not designed for occupancy or not intended for use in one place. It was this understanding of "building or structure" that the Court adopted. *See Taylor*, 495 U.S. at 598 ("We believe that Congress meant by 'burglary' the generic sense in which the term is now used in the criminal codes of most States.").

The Court further confirmed its adoption of the common understanding of the word "building" in its discussion of what would *not* qualify as generic burglary. The Court noted that a few states define burglary more broadly than generic burglary "by including places, such as automobiles and vending machines, *other than buildings*." *Id.* at 599 (emphasis added). As an example, the Court pointed to Missouri's second-degree burglary statute, which defined burglary to include breaking and entering into a booth, tent, boat, vessel, or railroad car—objects that could be described loosely as structures but that are either not designed for occupancy or not intended for use in one place. *Id.*

The dissent argues that the policy aims of Congress would be better served by a broader definition of burglary. But Congress chose not to define burglary when it amended the ACCA. To fill in that gap, the Supreme Court in *Taylor* defined burglary using a generic definition that we are bound to obey even if we think that the definition is deficient. Notably, Congress has not inserted a legislative definition of burglary into the ACCA since *Taylor*. Policy arguments therefore are not pertinent to our decision.[3]

---

[3]A thoughtful examination of the congressional intent behind the ACCA actually supports the definition of "building or structure" that the Supreme Court devised in *Taylor*. The dissent relies on Congress' belief in the inherently dangerous nature of burglary to argue for a broad definition that encompasses all structures "suitable for human occupation." Dissent at 6751. The dissent reasons that suitability for human occupation "involves an inherent risk of violence to persons." Dissent at 6755. By focusing only on *why* Congress included burglary as a predicate offense in the ACCA, the dissent ignores *what* Congress actually included. The original version of the ACCA limited burglaries to "entering or remaining surreptitiously

In *Gonzalez v. Duenas-Alvarez*, 127 S. Ct. 815 (2007), the Court clarified the scope of the categorical inquiry.

> [T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.

*Id.* at 822.

**[8]** In this case, Oregon defines second-degree burglary

---

*within a building*," *Taylor*, 495 U.S. at 581 (emphasis added) (internal quotation marks omitted), and "there is nothing in the [legislative] history to show that Congress intended in 1986 to replace the 1984 'generic' definition of burglary with something entirely different," *id.* at 590. The dissent omits a telling sentence when it quotes *Taylor*'s review of the ACCA's legislative history:

> Congress singled out burglary (as opposed to other frequently committed property crimes such as larceny and auto theft) for inclusion as a predicate offense . . . because of its inherent potential for harm to persons. The fact that an offender enters *a building* to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate.

*Id.* at 588 (emphasis added). *Contra* dissent at 6750 (omitting the second sentence).

Although a "risk of violence" motivated Congress to include burglary in the ACCA, neither Congress nor the Supreme Court included such a risk as an element in defining burglary. As the Court in *Taylor* noted, "Congress thought that certain general categories of property crimes—namely burglary, arson, extortion, and the use of explosives—so often presented a risk of injury to persons, . . . that they should be included in the enhancement statute, even though, *considered solely in terms of their statutory elements, they do not necessarily involve the use or threat of force against a person*." 495 U.S. at 597 (emphasis added).

more broadly than the ACCA. The text of the statute expressly includes in its definition that which the Supreme Court expressly excluded from the generic, federal definition. Under Oregon law, " '[b]uilding,' *in addition to its ordinary meaning*, includes any *booth, vehicle, boat, aircraft* or other structure adapted for overnight accommodation of persons or for carrying on business therein." Or. Rev. Stat. § 164.205(1) (emphases added). The Oregon legislature expressly recognized the ordinary, generic meaning of burglary and consciously defined second-degree burglary more broadly by extending the statute to non-buildings.[4] Where, as here, a state statute explicitly defines a crime more broadly than the generic definition, no "legal imagination," *Duenas-Alvarez*, 127 S. Ct. at 822, is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime. The state statute's greater breadth is evident from its text.

Oregon state courts have not narrowed this expansive definition—to the contrary, they have applied the statute just as broadly as its text allows. *See James*, 127 S. Ct. at 1594 ("But while the statutory language is broad, the Florida Supreme Court has considerably narrowed its application in the context of attempted burglary . . . ." ); *see also Duenas-Alvarez*, 127 S. Ct. at 822 (asking whether "state courts in fact . . . apply [a] statute in [a] special (nongeneric) manner"). In *State v. Nollen*, 100 P.3d 788, 788-89 (Or. Ct. App. 2004), for example, the Oregon Court of Appeals upheld the application of Oregon's second-degree burglary statute, Or. Rev. Stat. § 164.215(1), to an unlawful entry into a semi-truck trailer being used to collect charitable donations. In *State v. Spencer*, 545 P.2d 611, 612 (Or. Ct. App. 1976), the Oregon Court of

---

[4]Indeed, the legislative design of the broad definition was to provide coverage for those " 'structures *and vehicles* which typically contain human beings for extended periods of time.' " *State v. Scott*, 590 P.2d 743, 744 (Or. Ct. App. 1979) (emphasis added) (quoting Commentary, Proposed Oregon Criminal Code, § 135 p. 143 (1970)).

Appeals upheld the application of Oregon's statutory definition of a building, as narrowed for purposes of first-degree burglary, *see* Or. Rev. Stat. § 164.205(2), to a fishing vessel. Trailers and boats are not buildings in the ordinary sense of the word—they are not constructed edifices intended for use in one place.[5]

[9] In summary, second-degree burglary under Oregon law is not a categorical burglary for purposes of the ACCA because it encompasses crimes that fall outside the federal definition of generic burglary.[6] We therefore overrule our contrary holding in *Cunningham*, 911 F.2d 361.[7]

---

[5]The dissent emphasizes the fact that Oregon has limited its burglary statute to vehicles, booths, boats, and aircraft that are used for human habitation. Dissent at 6754-56. To the extent that our precedents suggest that state statutes satisfy the categorical inquiry when they define burglary to include non-buildings adapted for overnight accommodation, they are overruled. *See United States v. Reina-Rodriguez*, 468 F.3d 1147, 1156-57 (9th Cir. 2006); *United States v. Sparks*, 265 F.3d 825, 834 (9th Cir. 2001); *United States v. Sweeten*, 933 F.2d 765, 771 (9th Cir. 1991). Those cases relied on the fact that such vehicles or boats effectively serve as dwellings and that "the burglary of a mobile home or camper [or houseboat] is often likely to pose a greater risk of violence to the occupant or owner than the burglary of a building or house because it is more difficult for the burglar to enter or escape unnoticed." *Sweeten*, 933 F.2d at 771. Those cases, like the dissent today, failed to recognize that *Taylor* jettisoned analyzing the *use* of an object in favor of analyzing the *nature* of the object when it adopted an express definition of burglary that is limited to the breaking and entering of buildings and that does not include "risk of violence" as an element of the crime. Although a vehicle or boat that has been adapted for accommodation may qualify as a building in certain circumstances, it does not do so categorically. *See* Webster's Third New International Dictionary Unabridged 292 (1993) (distinguishing a building "from structures not intended for use in one place (as boats or trailers) even though subject to occupancy").

[6]In coming to a contrary conclusion, *Cunningham* made the mistake of examining Oregon's definition of second-degree burglary, 911 F.2d at 362 (quoting Or. Rev. Stat. § 164.215(1)), which tracks *Taylor*'s generic definition, without examining Oregon's unusual definition of a building, *see id.* at 363, which does not.

[7]We do not opine on whether it may have been proper to affirm the enhancement in *Cunningham* using the modified categorical approach. We overrule *Cunningham* only to the extent that it held second-degree burglary under Oregon law is categorically burglary for purposes of the mandatory minimum sentence under the ACCA.

**[10]** Because Oregon's second-degree burglary statute, Or. Rev. Stat. § 164.215, fails the categorical approach as to "burglary," the final inquiry is whether Defendant's prior convictions nevertheless satisfy the modified categorical approach.**8** *See Taylor*, 495 U.S. at 602. The government must demonstrate that Defendant pleaded guilty to three or more generic burglaries, using "the statement of factual basis for [each] charge, shown by a transcript of plea colloquy or by written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea." *Shepard*, 544 U.S. at 20 (citation omitted).

**[11]** Dutifully applying *Cunningham*, the district court never reached the modified categorical inquiry, nor did the government have any reason to suspect that it would. That being so, we remand to the district court on an open record to allow it to perform the modified categorical inquiry in the first instance. *See United States v. Matthews*, 278 F.3d 880, 885 (9th Cir. 2002) (en banc) ("[A]s a general matter, if a district court errs in sentencing, we will remand for resentencing on an open record—that is, without limitation on the evidence that the district court may consider.").

VACATED AND REMANDED.

---

**8**We do not reach the question whether, in view of *James*, 127 S. Ct. 1586, Oregon's second-degree burglary statute satisfies the categorical inquiry under the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii). Neither party raised the possible applicability of the residual clause, below or on appeal. On remand, the parties are free to make any arguments that they deem appropriate. If a residual-clause argument is made, the district court can examine the viability and, if reached, the merits of the argument in the first instance.

BEA, Circuit Judge, with whom KLEINFELD and TALLMAN, Circuit Judges, join, dissenting:

The Supreme Court, as recently as April 18, 2007, has explained in clear terms the *reason* burglary is included as a predicate offense in the Armed Career Criminal Act of 1984 ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii):

> The main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar, and a third party—whether an occupant, a police officer, or a bystander—who comes to investigate.

*James v. United States*, 127 S. Ct. 1586, 1594 (2007).

> "Congress thought that certain general categories of property crimes—namely *burglary*, arson, extortion, and the use of explosives—so often presented a risk of injury to persons, or were so often committed by career criminals, that they should be included in the enhancement statute . . . ."

*Id.* at 1592 (emphasis added) (quoting *Taylor v. United States*, 495 U.S. 575, 597 (1990)).

> Congress singled out burglary (as opposed to other frequently committed property crimes such as larceny and auto theft) for inclusion as a predicate offense . . . because of its inherent potential harm to persons. . . . There never was any proposal to limit the predicate offense to some special subclass of burglaries that might be especially dangerous, such as those where the offender is armed, or the building is occupied, or the crime occurs at night.

*Taylor*, 495 U.S. at 588.

> [The] purpose of [18 U.S.C. § 924(e)(2)(B)(ii)] was to "add State and Federal crimes against the property such as burglary, arson, extortion, use of explosives and similar crimes as predicate offenses where the conduct involved presents a serious risk of injury to a person."

*James*, 127 S. Ct. at 1592-93 (quoting H.R. Rep. No. 99-849, p.3 (1986)). The Supreme Court is not *trying* to tell us something. I submit it *has*: generic burglary includes felonious entries into buildings *and* "other structure[s]" suitable for human occupation wherein a threat of violence is likely to occur. *Taylor*, 495 U.S. at 598.

Notwithstanding these clear statements about the *reason* ACCA includes burglary as a predicate offense, and the Supreme Court's plain attempt in *Taylor* to define generic burglary broadly to give effect to congressional intent, today the majority returns our treatment of Oregon's burglary statute under ACCA to pre-*Taylor* status by overruling *United States v. Cunningham*, 911 F.2d 361 (9th Cir. 1990). *Taylor* meant to broaden the definition of burglary to give effect to Congress's goals of punishing repeat criminals who commit violent crimes that inherently pose harm to persons. Oregon, like the Court in *Taylor*, defined burglary beyond its common law roots[1] to punish criminals who commit crimes that involve a threat of harm to persons that arise at locations prevalent now, but unknown at the common law. Because the Oregon burglary statute when properly read comports with the generic definition in *Taylor*, I respectfully dissent.

## I.

As explained above, the reason Congress included burglary

---

[1]As noted in *Taylor*, the common law definition of burglary was restricted to "a breaking and entering of a dwelling at night, with intent to commit a felony . . . ." 495 U.S. at 592.

as a predicate offense in ACCA is clear: "Congress singled out burglary (as opposed to other frequently committed property crimes such as larceny and auto theft) for inclusion as a predicate offense . . . because of its inherent potential harm to persons." *Taylor*, 495 U.S. at 588. With this purpose in mind, the Supreme Court defined generic burglary that qualified as a predicate offense under ACCA as "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." 495 U.S. at 598. As we have previously recognized, the Court settled upon this broad definition to meet Congress's intent to broaden the category of burglary offenses that qualified as predicate offenses under ACCA. *United States v. Sweeten*, 933 F.2d 765, 771 (9th Cir. 1991). Notably, the Court rejected the common law definition of burglary because "the contemporary understanding of burglary has diverged a long way from its common law roots," and, therefore, the common law definition would ill serve the enhancement purposes of ACCA. *Taylor*, 495 U.S. at 593 (internal quotation marks omitted). The Court explained:

> The common-law definition does not require that the offender be armed or that the dwelling be occupied at the time of the crime. An armed burglary of an occupied commercial building, in the daytime, would seem to pose a far greater risk of harm to persons than an unarmed nocturnal breaking and entering of an unoccupied house. It seems unlikely that Congress would have considered the latter, but not the former, to be a "violent felony" counting towards a sentence enhancement.

*Id.* at 594.

While not specifically defining what it meant by "building or other structure," the Court provided some explanation of how to apply its generic definition. For instance, the Court recognized that Missouri's second-degree burglary statute defined burglary more broadly than the generic definition

because it included "breaking and entering '*any* booth or tent, or *any* boat or vessel, or railroad car.' " *Id.* at 599 (emphases added) (quoting Mo. Rev. Stat. § 560.070 (1969) (repealed)). Such locations do not constitute a "building or structure" as used in *Taylor*'s definition of burglary. Recognizing, however, that states' definitions of burglary would vary, the Court instructed that "where the generic definition has been adopted, with minor variations in terminology, then the trial court need find only that the state statute corresponds *in substance* to the generic meaning of burglary." *Id.* (emphasis added). It is the substance of the burglary statute, not the technical terminology employed, with which we should concern ourselves. The majority inverts this instruction, employing, I fear, form over substance in evaluating Oregon's burglary statute.

## II.

At first blush, it would appear the majority's holding is bullet-proof: *Taylor* held a burglary statute including places such as automobiles was broader than the generic burglary definition it adopted, and Oregon defines building in its burglary statute to include places such as vehicles. Not so fast. Neglecting to analyze all of the state statute—addressing, rather, merely some of its words—the majority overlooks that Oregon has carefully limited what *types* of vehicles, aircraft, boats, and other structures qualify as buildings. Only those structures "adapted" in such a way that people can fit and are likely to be found therein qualify as a "building."

A person commits second degree burglary in Oregon "if the person enters or remains unlawfully in a building with intent to commit a crime therein." Or. Rev. Stat. § 164.215(1). " 'Building,' in addition to its ordinary meaning, includes any booth, vehicle, boat, aircraft or other structure adapted for overnight accommodation of persons or for carrying on business therein." Or. Rev. Stat. § 164.205(1). Because the definition of "building" includes non-building locations such as

"vehicle," the majority reasons the definition is akin to the Missouri statute found overbroad in *Taylor*. Maj. Op. at 6746-48.

But Oregon's definition of "building" is significantly different than the Missouri statute in *Taylor* because in Oregon, not all "booth[s], vehicle[s], boat[s], [or] aircraft" constitute a "building" for purposes of a burglary conviction. Indeed, only those structures "adapted for overnight accommodation *of persons* or for carrying on business *therein*" can be a "building" for purposes of burglary. Or. Rev. Stat. § 164.205(1) (emphases added). Oregon courts have explained why the drafters of Oregon's burglary statute included the adaptation clause:

> The Commentary to the Oregon Criminal Code explains that the purpose of this expansive definition of building is "to include those structures and vehicles *which typically contain human beings for extended periods of time*, in accordance with the original and basic rationale of the crime: protection against invasion of premises likely to terrorize occupants."

*State v. Scott*, 590 P.2d 743, 744 (Or. Ct. App. 1979) (emphasis added) (quoting Commentary, Proposed Oregon Criminal Code, § 135 p. 143 (1970)); *see also Timothy v. State*, 90 P.3d 177, 179-80 (Alaska Ct. App. 2004) ("The Oregon drafters did not say that they intended to include all vehicles within the definition of 'building.' Rather, they declared that their intention was to include those . . . vehicles which typically contain human beings for extended periods of time." (internal quotation marks omitted) (omission in the original)).

This limitation is significant for it illustrates that Oregon has statutorily defined burglary to effect burglary's original purpose—to wit, protection of *people*. In so doing, the burglary statute distinguishes between ordinary vehicles and

vehicles wherein people are likely to be found, with only the latter constituting a "building" under the burglary statute. In *State v. Scott*, the Oregon Court of Appeals ruled that a railroad boxcar, while certainly a type of vehicle, is not a "building" under Oregon burglary law because there was no evidence it had been adapted to accommodate people or to carry on business therein. 590 P.2d at 744. While the boxcar was certainly a structure "designed for the storage of goods during their transportation," it had not been adapted such that people were likely to be found therein; consequently, it could not serve as the situs of burglary. *Id.*

*State v. Nollen*, 100 P.3d 788 (Or. Ct. App. 2004), confirms that vehicles, booths, boats and aircraft are considered "buildings" only when adapted to be structures wherein people are likely to be found. There, the Oregon Court of Appeals ruled that a semi-truck trailer used to collect donated goods had been adapted for carrying on business therein because the trailer had been unhooked from the truck, placed at a permanent donation collection station marked by permanent signs, and supplied with stairs to allow people to enter the trailer. *Id.* at 788-89. Importantly, the court noted that no debate existed whether the trailer was a "vehicle"; the debate, rather, focused solely on whether the trailer had been adapted sufficiently to constitute a "building" under the burglary statute. *Id.* at 789. The trailer's location at a permanent collection station with stairs leading into the trailer sufficed to bring the trailer within the definition of "building" because these adaptations made it likely that people were to be found in the trailer donating goods. Hence a burglary would likely pose a threat of harm to persons.

Because Oregon has limited its seemingly expansive definition of building to structures wherein people are likely to be found, second degree burglary in Oregon by definition involves an inherent risk of violence to persons. Breaking and entering an ordinary vehicle to commit a crime therein likely does not pose such a risk, hence the overbroad Missouri stat-

ute in *Taylor*. But breaking and entering a vehicle adapted for overnight accommodation of persons, such as a Recreational Vehicle ("RV"), or a vehicle adapted for carrying on business therein, such as the trailer in *Nollen*, inherently poses a risk of violence to persons.[2] While a vehicle, boat, or aircraft adapted to accommodate sleeping or to conduct business therein might not be a "building" under the "ordinary meaning" of building, Or. Rev. Stat. § 164.205(1), they are certainly "structures" contemplated in *Taylor*, 495 U.S. at 598 (defining generic burglary as "an unlawful or unprivileged entry into, or remaining in, a building *or other structure*, with intent to commit a crime" (emphasis added)).[3] Given that "[a] state court's interpretation of a statute is binding in determining whether the elements of generic burglary are present," *United States v. Tighe*, 266 F.3d 1187, 1196 (9th Cir. 2001), it is clear the Oregon statute as applied in *Scott* and *Nollen* is not equivalent to the Missouri statute found overbroad in *Taylor*.

There is no need to show that a threat of harm to persons must *always* exist to hold Oregon's second degree burglary statute qualifies as a crime of violence under ACCA categorically. In *James*, the Supreme Court reiterated what it first made clear in *Gonzalez v. Duenas-Alvarez*, 127 S. Ct. 815,

---

[2]The majority criticizes this analysis as wrongly focusing on the *use* rather than the *nature* of a structure. Maj. Op. at 6748 n.5. Not so. The analysis quite properly focuses on both the *nature* and *use* of the structure because there is no difference between the two. The nature of a home or an RV is to provide shelter to persons; the use of a home or an RV is to provide shelter to persons. The nature of the trailer in *Nollen*, once adapted, was to provide a structure for carrying on business therein; the use, of course, was to carry on business in the trailer. The majority's attempted creation of a difference between "nature" and "use" is itself an abstraction, which does not cure the shortcomings of the majority's analysis.

[3]"Structure" is defined as "Something built or constructed, as a building or dam . . . ." *Webster's New Twentieth Century Dictionary Unabridged* 1806 (2d ed. 1979). Vehicles, booths, boats, and aircraft certainly fall under this definition.

822 (2007): "We do not view [the *Taylor* categorical] approach as requiring that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony." 127 S. Ct. at 1597. The Court explained that "the proper inquiry is whether the conduct encompassed by the elements of the offense, *in the ordinary case*, present a serious potential risk of injury to another." *Id.* (emphasis added). Under the Oregon second degree burglary statute, the ordinary burglary case certainly presents a risk of injury to another because burglary is defined to require potential threats of harm to persons in mind.[4] I would therefore hold that Oregon's second degree burglary statute is categorically a crime of violence under *Taylor*'s definition of burglary and, by so holding, re-affirm our holding in *Cunningham*.

## III.

The majority admits that a "vehicle or boat that has been adapted for accommodation may qualify as a building in certain circumstances," but holds that they do not so qualify categorically. Maj. Op. at 6748 n.5. The majority offers no explanation *why* this is the case, other than to cite to a dictionary that excludes from the definition of building " 'structures not intended for use in one place (as boats or trailers) even though subject to occupancy.' " *Id.* (quoting Webster's Third New International Dictionary Unabridged 292 (1993)). The majority's reasoning is logically unsound and flies in the face of a number of well-reasoned prior circuit decisions.

At least two problems are obvious with the majority's reliance on this dictionary definition. First, there is no support for the proposition that the Supreme Court in *Taylor* defined burglary as limited only to structures intended for use in one place. Indeed, relying on this static, dictionary definition

---

[4]*Compare Scott*, 590 P.2d at 743-44, *with Nollen*, 100 P.3d at 788-89, *supra.*

ignores *Taylor*'s and *James*'s unambiguous explanations that ACCA includes burglary because it is a crime that presents a risk of harm to persons and is accordingly a crime of violence. To paraphrase the Court in *Taylor*, a burglary of an occupied RV poses a much greater risk of harm to persons than a burglary of an abandoned warehouse. "It seems unlikely that Congress would have considered the latter, but not the former, to be a 'violent felony' counting towards a sentence enhancement" merely because the structure at issue in the latter is intended for use in one place. *Taylor*, 495 U.S. at 594.[5]

Second, as explained above, *Taylor* defined burglary to include an unlawful entry into "a building *or other structure* . . . ." *Id.* at 598 (emphasis added). The majority mistakenly bases its analysis on the assertion that all non-buildings are excluded in the *Taylor* definition. This assertion simply ignores *Taylor*'s express inclusion of "other structure[s]" in its burglary definition.[6] Indeed, the *Taylor* generic definition

---

[5]The majority characterizes references to congressional intent as "policy argument" and therefore irrelevant to the decision. Maj. Op. at 6745. Far from being a policy argument, such references recognize that the Supreme Court in *Taylor* meant to *broaden* the definition of burglary to effect Congress's intent of punishing criminals who commit crimes that pose threats of harm to persons. It is the majority, not *Taylor*, which narrowly restricts generic burglary to fixed buildings and ignores burglaries that present harm to persons.

If there were any lingering doubt regarding how the Supreme Court intended the generic burglary definition in *Taylor* to be applied, *James* has removed all doubt. There, in explaining application of the categorical approach for crimes listed under 18 U.S.C. § 924(e)(2)(B)(ii), the Court stated: "[T]he proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, *presents a serious potential risk of injury to another*." *James*, 127 S. Ct. at 1597 (emphasis added). As shown, in Oregon the ordinary case of second-degree burglary by definition presents such a risk.

[6]Ironically, the majority's chosen definition of "building" labels boats and trailers as "structures." Maj. Op. at 6744 n.2. Hence, if this dictionary definition were the final say on our application of *Taylor*, boats and trailers would by necessity be included in *Taylor*'s generic definition because

of burglary uses the same four words as does the Oregon statutory definition of "building": "Building . . . *or other structure* . . . ." Or. Rev. Stat. § 164.205(1) (emphasis added). The majority opinion addresses its own concept of what "building" means, but does not address what "other structure" means in the *Taylor* generic definition of burglary—other than to read "other structure" out of the Court's generic burglary definition[7] —and in the Oregon statute.

they are "structures." The majority avoids this problem by limiting the generic definition to structures intended for use in one place. It would come as a surprise to George M. Pullman (1831-1897) to learn that his palatial Pullman cars would be considered uninhabitable structures because they moved around the country.

[7]The majority holds that the Court's inclusion of "other structure" merely served to "encapsulate[ ] the common understanding of the word 'building.' " Maj. Op. at 6744. This understanding, the majority conveniently asserts, is that contained in the dictionary definition the majority has chosen—namely "a structure designed for occupancy that is intended for use in one place." Maj. Op. at 6744. The majority does not point to one citation in *Taylor* where the Supreme Court adopts a similar, narrow definition. This comes as no surprise because there is no such citation in *Taylor*.

*Taylor*'s citations to Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 8.13 (1986), offer no support for the majority's narrow definition of "building or structure" that reads out "structure." LaFave indeed explains that burglary "statutes today typically use a much broader term [than dwelling], such as 'building or structure . . . ." Wayne R. LaFave, 3 *Substantive Criminal Law* § 21.1(c) (2d ed. 2003). The statutes to which LaFave cites which include "structure" are revealing because, contrary to the majority's assumption, many define structure to include structures intended for use in *more than one place*. *Id.* § 21.1(c) n.85. For example, Ariz. Rev. Stat. Ann. § 13-1506 includes a "nonresidential structure," and "[t]he word 'structure' includes any vehicle." *State v. Harris*, 655 P.2d 1339, 1340 (Ariz. Ct. App. 1982). Ark. Code Ann. § 5-39-201 includes "a residential occupiable structure," and Arkansas courts have applied this definition to mobile trailer homes. *Julian v. State*, 767 S.W.2d 300, 300-01 (Ark. 1989). Iowa Code Ann. § 713.1 includes "an occupied structure," and occupied structure includes vehicles such as delivery trucks. *State v. Sylvester*, 331 N.W.2d 130, 131-32 (Iowa 1983). Mich.

The majority's approach is also at odds with our well-reasoned precedent. In *Sweeten*, we applied the Supreme Court's holding in *Taylor* to a Texas burglary statute that defined habitation to include vehicles. In holding that the Texas statute was not overbroad, we carefully explained that the Texas statute did "not define 'vehicles' to be synonymous with 'automobiles' as the latter term was generically used by the Supreme Court in *Taylor*" because the Texas statute limited vehicles to those " 'adapted for the overnight accommodation of persons . . . .' " *Sweeten*, 933 F.2d at 770 (emphasis omitted) (quoting Tex. Penal Code Ann. § 30.01 (Vernon 1974)). I include here relevant portions of our holding in *Sweeten* to illustrate further the majority's misapprehension of ACCA and *Taylor*:

> As the *Taylor* Court itself emphasized, the recent legislative history of section 924(e) indisputably demonstrates a congressional intent to broaden the category of qualifying burglaries. . . .
>
> . . . .

---

Comp. Laws Ann. § 750.110 includes "structure," and Michigan courts have held a trailer falls within the definition. *People v. Walters*, 465 N.W.2d 29, 31-32 (Mich. Ct. App. 1990) (explaining that "permanence is not dispositive of whether a given structure falls within the scope of the statute").

Although further examples are available, these suffice to show the majority's assertion that most states define structure to mean buildings intended for use in one place is simply inaccurate. Without this leg to stand on, the majority's conclusion that by including "other structure," *Taylor* meant only to define a fixed building crumbles. The best that can be gathered from LaFave is that while many states include "structures" in their burglary statutes, the states have numerous, varying definitions of what constitutes a "structure." *James* resolves any potential confusion as to what *Taylor*'s inclusion of "other structure" means by reemphasizing that threat of violence to persons in the ordinary case is at the forefront of any categorical analysis of the elements of a state crime included in 18 U.S.C. § 924(e)(2)(B)(ii). 127 S. Ct. at 1597.

Given Congress's intent to define "burglary" broadly, it is implausible to suggest that Sweeten's "burglary of a habitation," as defined under the Texas statute, is not a burglary within the meaning of section 924(e)(2)(B)(ii). The burglary of a mobile home or other "vehicle adapted for the overnight accommodation of persons" is not analogous to the theft of an automobile or to the other property crimes whose relative lack of severity the *Taylor* Court (and presumably Congress) meant to exclude from its generic definition. Rather, it is analogous to the burglary of a building or house. Indeed, the burglary of a mobile home or camper is often likely to pose a greater risk of violence to the occupant or owner than the burglary of a building or house because it is more difficult for the burglar to enter or escape unnoticed. In light of these considerations, we hold that the "burglary of a habitation," as defined to mean the burglary of "a structure or vehicle adapted for the overnight accommodation of persons," constitutes the burglary of a "structure" within the generic definition of *Taylor* and thus within the meaning of section 924(e)(2)(B)(ii).

*Id.* at 771.

With nothing more than a wink and a nod, the majority overrules *Sweeten*. Maj. Op. at 6748 n.5. The majority offers no justification for so doing, other than to fall back on its narrow definition of "building or structure," thereby employing form over substance. Maj. Op. at 6748 n.5. *Sweeten*, on the other hand, relied on the Supreme Court's explanation of the *purpose* of burglary's inclusion in ACCA and held that where the substance of a state burglary statute is the same as the substance of generic burglary, the state statute qualifies as a predicate offense under ACCA. *See Taylor*, 495 U.S. at 599 ("[W]here the generic definition has been adopted, with minor variations in terminology, then the trial court need find only

that the state statute corresponds *in substance* to the generic meaning of burglary." (emphasis added)).

The majority also overrules the portion of *United States v. Reina-Rodriguez*, 468 F.3d 1147, 1156-57 (9th Cir. 2006), wherein we held that Utah's burglary statute qualified categorically as generic burglary under ACCA. There, appellant argued that Utah's inclusion of "watercraft" and "aircraft" within the definition of "building" resulted in a burglary statute broader than generic burglary in *Taylor*. We disagreed for the same reasons we disagreed in *Sweeten*. I again include relevant portions of our holding to highlight the errors in the majority's reasoning:

> [A]lthough Utah's burglary statute defines "building" more broadly than its federal meaning, it limits "dwelling" to "a building which is usually occupied by a person lodging therein at night . . . ." Thus, entering or remaining in an ordinary unoccupied car would not qualify as burglary of a dwelling under the statute, and the Supreme Court's concern in *Taylor* would not apply.
>
> . . . .
>
> The Supreme Court has also explained that Congress categorized burglary as a crime of violence because of its inherent potential harm to persons. . . . These precise factors are present where a structure is adapted for sleeping or lodging. . . .
>
> Moreover, Utah courts have held that Utah's second degree burglary [of a dwelling] statute is intended to protect people while in places where they are likely to be living and sleeping overnight. . . .
>
> We conclude that Utah's definition of "dwelling" is sufficiently restricted by means of its adaptation

requirement to fall within the strictures set forth in *Taylor* . . . .

*Id.* at 1156-57 (internal quotation marks and citations omitted) (second alteration in the original). Rather than stubbornly applying form over substance based on a narrow dictionary definition, in *Reina-Rodriquez* we looked to congressional intent in categorizing burglary as a crime of violence in ACCA, *Taylor*'s rationale underscoring its generic burglary definition, prior circuit law, and state decisions interpreting the burglary statute.[8]

In contrast to the majority's decision today, our holdings in *Sweeten* and *Reina-Rodriguez* were careful, thoughtful, and in accord with *Taylor* and ACCA. The Court's recent decision in *James v. United States*, 127 S. Ct. 1586 (2007), compellingly reinforces our holdings in these cases and resolves any lingering ambiguities concerning *Taylor*'s less-than-clear generic burglary definition. Rather than overruling well-reasoned, proper decisions such as *Sweeten* and *Reina-*

---

[8]*United States v. Sparks*, 265 F.3d 825 (9th Cir. 2001), employs the same reasoning as *Sweeten* and *Reina-Rodriquez* in analyzing Alaska's burglary statute. In finding the Alaska burglary statute overbroad based on its inclusion of vehicles adapted for carrying on business, *Sparks* based its holding on an explanation of why no greater threat to persons existed in vehicles adapted for business than in ordinary vehicles. The Oregon statute at issue here differs in one significant respect from the Alaska statute in *Sparks*: Oregon's statute requires adaptation "for carrying on business *therein*" Or. Rev. Stat. § 164.205(1) (emphasis added); Alaska's statute requires only adaptation "for carrying on business." Alaska Stat. § 11.81.900(b)(5).

The significance of "therein" is illustrated under the canon of statutory construction *noscitur a sociis*, "which counsels that the meaning of an unclear word or phrase should be determined by the words immediately surrounding it." *James*, 127 S. Ct. at 1605 (Scalia, J., dissenting). When read together with the words "other structures adapted for overnight accommodation or persons," the term "carrying on business therein" implies that "persons" are doing the carrying on of the business in the "structure." Or. Rev. Stat. § 164.205(1).

*Rodriguez* on the basis of a dictionary definition, I would continue to apply the generic definition of burglary as intended by Congress and the Supreme Court in *Taylor*.

\* \* \*

In sum, I would hold that Oregon's burglary statute categorically qualifies as a burglary offense under 18 U.S.C. § 924(e)(2)(B)(ii) as burglary is defined in *Taylor*, and affirm the district court's sentence enhancement. While defining "building" to include structures other than buildings, Oregon's burglary statute limits those structures to ones in which people are likely to be present. The scope of the Oregon statute is thus no broader than generic burglary, which includes "building or other structures" where there exists a threat of harm to persons. *Taylor*, 495 U.S. at 598.

This is a straightforward case, easily decided based on our and Supreme Court precedent. We erred first in taking this simple case en banc *sua sponte* and today compound that error by overruling prior, well-reasoned case law with no reason for doing so. The greatest mistake, however, lies in our removing as a predicate offense under ACCA a state burglary statute that comports precisely with congressional purposes in enacting ACCA and with the Supreme Court's generic burglary definition in *Taylor*. I cannot join in such a deviation from Supreme Court and prior circuit precedent. Accordingly, I respectfully dissent.