### UNITED STATES of America, Plaintiff,

v.

### Christobal Miguel RIOS, Defendant.

### No. 2:13-CR-02059-RHW

United States District Court, E.D. Washington.

Signed August 12, 2016

Thomas J. Hanlon, U.S. Attorney's Office, Yakima, WA, for Plaintiff.

Alison Klare Guernsey, Diane E. Hehir, Federal Public Defender, Yakima, WA, for Defendant.

### ORDER GRANTING DEFENDANT'S 28 U.S.C. § 2255 MOTION TO VACATE SENTENCE AND FOR RESENTENCING

### U.S. MARSHALS SERVICE ACTION REQUIRED

ROBERT H. WHALEY, Senior United States District Judge

· Before the Court is Defendant Christobal Miguel Rios's 28 U.S.C. § 2255 Motion to Vacate Sentence and for Resentencing, **ECF No. 49.** Having reviewed the motions and all relevant filings, the Court is fully informed.

### BACKGROUND

On April 9, 2013, a grand jury returned a single-count indictment charging Mr. Rios with possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g). Mr. Rios pled guilty to the one-count indictment, a felon in possession charge, on June 4, 2013. The written plea agreement provided that the parties "believe[d]" Mr. Rios was subject to a Base Offense Level of 20 pursuant to U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2K2.1 (2015), and would jointly recommend a sentence of 60 months imprisonment. The agreement also contains express waivers of Mr. Rios's rights to appeal and file motions under 28 U.S.C. § 2255.

Mr. Rios's Presentence Investigation Report advised that Mr. Rios qualified for an enhanced Base Offense Level of 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(A) because his 2009 conviction for residential burglary qualified as a crime of violence under U.S.S.G. § 4B1.2(a)(2). Probation also recommended a three-point reduction in offense level for acceptance of responsibility, resulting in a Total Offense Level of 17.·

At the October 1, 2013 sentencing hearing, the Court adopted the Presentence Investigation Report without change and sentenced Mr. Rios to the agreed upon 60 month term of incarceration. The Judgment issued on October 4, 2013. Mr. Rios did not file an appeal. On May 4, 2016, Mr. Rios filed the instant motion to vacate his sentence pursuant to 28 U.S.C. § 2255, arguing that the Supreme Court's decision in *Johnson v. United States*, —— U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), which invalidated the residual clause of the Armed Career Criminal Act ("ACCA"), likewise invalidated the residual clause contained in U.S.S.G. § 4B1.2(a)(2).

On June 27, 2016, after briefing on Mr. Rios's motion was completed, the Supreme Court granted certiorari in *Beckles v. United States*, —— U.S. ——, 136 S.Ct. 2510, 195 L.Ed.2d 838 (2016), which is slated to answer the key question presented by Mr. Rios's motion: whether the Supreme Court's decision in *Johnson* applies retroactively to cases on collateral review challenging federal sentences enhanced under the residual clause in U.S.S.G. § 4B1.2(a)(2). Shortly thereafter, on July 5, 2016, the Court struck the hearing date on Mr. Rios's motion and requested supplemental briefing on whether a stay pending *Beckles* was appropriate. Having concluded that a stay would be improper, the Court issues the following Order.

## DISCUSSION

### I. Legal Standard

#### A. 28 U.S.C. § 2255

28 U.S.C. § 2255 outlines four grounds upon which a Court may grant relief to a prisoner who challenges his sentence: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack." 28 U.S.C. § 2255(a). Although there are four categories, the range of claims that fall within the scope of § 2255 are narrow. *United States v. Wilcox*, 640 F.2d 970, 972 (9th Cir.1981). Ordinarily, the asserted error of law must be "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 429, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)).

#### B. The U.S.S.G. § 2K2.1 Enhancement

Pursuant to U.S.S.G. § 2K2.1, a defendant convicted of unlawful possession of a firearm is subject to an enhanced Base Offense Level of 20 if he or she has a prior felony conviction for either a "crime of violence" or a "controlled substance offense." *See* U.S.S.G. § 2K2.1(a)(4)(A). The Guidelines define crime of violence to include any crime punishable by imprisonment for a term exceeding one year that:

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

U.S.S.G. § 4B1.2(a) (emphasis added).

The italicized language in U.S.S.G. § 4B1.2(a)(2) is commonly known as the "residual clause." In *Johnson v. United States*, the Supreme Court held that the identically worded "residual clause" of the ACCA, 18 U.S.C. 924(e)(2)(B)(ii), violates a defendant's right to due process because it is unconstitutionally vague. 135 S.Ct. at 2560. Generally, the residual clauses in the ACCA and U.S.S.G. § 4B1.2(a)(2) are interpreted according to the same precedent.

*See United States v. Coronado*, 603 F.3d 706, 709–11 (9th Cir.2010).

## II. Analysis

Mr. Rios argues that "it follows from *Johnson*" that the residual clause in the Guidelines is, likewise, unconstitutionally vague. Because *Johnson* operated to invalidate the residual clause language in U.S.S.G. § 4B1.2(a)(2), Mr. Rios contends, an offense can only qualify as a "crime of violence" under the Guidelines if it falls within either U.S.S.G. § 4B1.2(a)(1) (the "elements clause) or the first clause of U.S.S.G. § 4B1.2(a)(2) (the "enumerated offenses clause"). Mr. Rios claims that post-*Johnson*, his residential burglary conviction no longer qualifies as a crime of violence and accordingly, that his 60-month sentence is in violation of the law.

The government opposes Mr. Rios's motion on two independent grounds. First, the government contends that the Court should enforce Mr. Rios's express waiver of his right to collaterally attack his conviction and sentence. Second, the government contends that, pursuant to the Supreme Court's decision in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion), *Johnson* is a non-watershed, procedural rule as applied to the Guidelines and thus, is not retroactive to cases on collateral review.

### A. Waiver of Collateral Review

■ Plea agreements are "essentially contracts" and are to be enforced pursuant

to their literal terms, construing any ambiguities in the defendant's favor. *United States v. Heredia*, 768 F.3d 1220, 1230 (9th Cir.2014). A waiver of appellate rights is enforceable if (1) the language of the waiver encompasses the defendant's right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made." *United States v. Medina–Carrasco*, 815 F.3d 457, 461 (9th Cir.2015). But even if a defendant's waiver meets this criteria, the appeal waiver will not apply if: (1) a defendant's guilty plea failed to comply with FED. R. CRIM. P. 11; (2) the sentencing judge informs a defendant that he or she retains the right to appeal; (3) the sentence does not comport with the terms of the plea agreement; or (4) the sentence violates the law. *United States v. Bibler*, 495 F.3d 621, 624 (9th Cir.2007) (collecting cases). "A sentence is illegal if it exceeds the permissible statutory penalty for the crime or violates the Constitution." *Id.* Thus, the questions of whether the collateral-attack waiver may be enforced and whether Mr. Rios has proved a valid constitutional claim under *Johnson* collapse into the same inquiry. Because the Court finds that Mr. Rios's sentence violates the Constitution, his waiver of collateral review does not bar his claim.

### B. Retroactivity

■ Justice O'Conner's plurality opinion in *Teague v. Lane* provides the "framework for retroactivity in cases on federal collateral review."[1] *Montgomery v. Loui-*

---

1. The Ninth Circuit has explicitly held that *Teague* applies to a federal prisoner's request for relief under 28 U.S.C. § 2255 as well as a state prisoner's request for relief under 28 U.S.C. § 2254. *United States v. Sanchez–Cervantes*, 282 F.3d 664, 667 (9th Cir.2002). More recently, however, it has expressed "some doubt" about whether *Teague* applies to federal prisoners, though *Sanchez–Cervantes* remains good law. *Reina–Rodriguez v. United* States, 655 F.3d 1182, 1189 (9th Cir.

2011). The Supreme Court has assumed, but never held, that *Teague* applies to motions under 28 U.S.C. § 2255. *See, e.g., Welch v. United States*, — U.S. ——, 136 S.Ct. 1257, 1264, 194 L.Ed.2d 387 (2016) ("The parties here assume that the *Teague* framework applies in a federal collateral challenge to a federal conviction as it does in a federal collateral challenge to a state conviction, and we proceed on that assumption.").

*siana,* —— U.S. ——, 136 S.Ct. 718, 728, 193 L.Ed.2d 599 (2016). Under *Teague,* new constitutional rules generally do not apply retroactively to convictions that were final when the new rule was announced. *Id.* Teague recognized two categories of rules, however, that are not subject to its retroactivity bar. *Id.* First, courts must give retroactive effect to new substantive rules of constitutional law. *Id.* "Second, new watershed rules of criminal procedure, which are procedural rules implicating the fundamental fairness and accuracy of the criminal proceeding, will also have retroactive effect." *Welch v. United States,* —— U.S. ——, 136 S.Ct. 1257, 1265, 194 L.Ed.2d 387 (2016) (internal quotation marks omitted) (quoting *Saffle v. Parks,* 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990)).

Both parties agree that *Johnson* announced a new rule and for good reason, there is relatively little question that *Johnson* did so. *See Teague,* 489 U.S. at 301, 109 S.Ct. 1060 ("[A] case announces a new rule if the result was not *dictated* by current precedent existing at the time the defendant's conviction became final." (emphasis in original)). The question here is whether that new rule, as applied to the Guidelines, falls within one of the two categories that have retroactive effect under *Teague.* Mr. Rios argues that *Johnson* is retroactive because it is a substantive rule of constitutional law.

Substantive rules alter "the range of conduct or the class of persons that the law punishes," including "decisions that narrow the scope of a criminal statute by interpreting its terms ... constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish," *Welch,* 136 S.Ct. at 1265, and "rules prohibiting a certain category of punishment for a class of defendants because of their status or offense," *Montgomery v.*

*Louisiana,* —— U.S. ——, 136 S.Ct. 718, 728, 193 L.Ed.2d 599 (2016). "Procedural rules, by contrast, 'regulate only the *manner of determining* the defendant's culpability.'" *Id.* (emphasis in original) (quoting *Schriro v. Summerlin,* 542 U.S. 348, 353, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004)). Such rules alter "the range of permissible methods for determining whether a defendant's conduct is punishable"—they do not "produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with the use of the invalidated procedure might have been acquitted otherwise." *Id.* (quoting *Schriro,* 542 U.S. at 353, 124 S.Ct. 2519).

The government urges the Court to utilize an as-applied approach to deciding whether the rule announced in *Johnson* is substantive or procedural in the Guidelines context. Although *Johnson* announced a new substantive rule of constitutional law that applies retroactively on collateral review to the ACCA, *Welch,* 136 S.Ct. at 1268, the government contends that, as applied to the Guidelines, *Johnson* is not retroactive because in that application *Johnson* announced a new non-watershed procedural rule. ECF No. 58 at 8. In the context of the Guidelines, the government argues, *Johnson* is procedural because unlike its application to the ACCA, "applying *Johnson* to the Guidelines does not alter the statutory bounds of available sentences," ECF No. 58 at 9, it merely guides the execution of a court's discretion in selecting the appropriate sentence from within a broad and otherwise stagnate range of lawful penalties. *See Mistretta v. United States,* 488 U.S. 361, 396, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (noting that the Guidelines do not usurp "the legislative responsibility for establishing minimum and maximum penalties for every crime," but instead operate "within the broad limits established by Congress.").

■ This argument suffers from two fatal flaws. To begin, a new rule need not alter the statutory minimum or maximum penalty to be substantive. The Supreme Court confirmed this view in its decision in *Montgomery v. Lousiana Montgomery* held that the new rule established in *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2015), that juveniles could not be sentenced to life without parole without a hearing to account for their youth, was substantive and therefore retroactive. 136 S.Ct. at 732. Though *Miller* had no impact on the statutory maximum or minimum sentence—courts could still find that a juvenile offender was "permanent[ly] incorrigib[le]" and impose life imprisonment without parole, *see Montgomery*, 136 S.Ct. at 734—the Supreme Court found *Miller's* holding to be retroactive on collateral review because it "rendered a certain penalty unconstitutionally excessive for a category of offenders." *Montgomery*, 136 S.Ct. at 736. *Montgomery* makes clear that new rules do not have to alter the statutory maximum or minimum sentence to be substantive and retroactive on collateral review.

Moreover, Ninth Circuit precedent precludes the as-applied approach to retroactivity advocated by the government. In *Reina–Rodriguez v. United States*, 655 F.3d 1182 (9th Cir.2011), the Ninth Circuit considered whether its decision in *United States v. Grisel*, 488 F.3d 844 (9th Cir. 2007), which held that Oregon's second-degree burglary statute was not categorically equivalent to "generic burglary" under the ACCA, was retroactive on collateral review. By way of § 2255 motion, Mr. Reina-Rodriguez challenged his 16-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii), which was based on a

conclusion that his conviction for residential burglary was a crime of violence under U.S.S.G. § 4B1.2(a)(2). Mr. Reina-Rodriguez argued that because his sentence was enhanced by operation of U.S.S.G. § 4B1.2(a)(2) (a functionally identical provision to the ACCA's definition of violent felony), after *Grisel* his second degree burglary conviction no longer qualified as a crime of violence, notwithstanding the fact that his conviction was final before *Grisel* was decided. Without distinguishing between *Grisel's* application to the ACCA and its application to the Guidelines, the *Reina–Rodriguez* court held that *Teague* did not bar retroactive application of *Grisel* regardless of context, because *Grisel* "altered the conduct that substantively qualifies as burglary under the categorical approach." *Reina–Rodriguez*, 655 F.3d at 1189.

Like *Grisel, Johnson* altered the conduct that substantively qualifies as a violent felony and thus, announced a substantive rule. *Welch*, 136 S.Ct. 1257 ("Under this framework, the rule announced in *Johnson* is substantive. By striking down the residual clause as void for vagueness, *Johnson* changed the substantive reach of the Armed Career Criminal Act, altering 'the range of conduct or the class of persons that the [Act] punishes.'" (quoting *Schriro*, 542 U.S. at 353, 124 S.Ct. 2519)). Following *Reina–Rodriguez*, substantive rules, like the one announced in *Johnson*, which narrow the subset of crimes that qualify as violent felonies under the ACCA, apply retroactively to the corresponding Guidelines provision without regard to how the *Teague* framework might operate when applied independently to the Guidelines.[2] Accordingly, through *Reina–*

**2.** This position is consistent with Ninth Circuit precedent that *Teague* should not be applied "on a piecemeal basis." *See Sanchez–Cervantes*, 282 F.3d at 670. As *the Sanchez–* *Cervantes* court notes: "[a] new rule should be retroactive as to all cases or as to none to avoid inconsistencies and unnecessary litigation." *Id.*

*Rodriguez*, *Welch*'s holding that *Johnson* is substantive and retroactive in the ACCA context binds this Court to the conclusion that *Johnson* applies retroactively to the Guidelines.[3]

### C. Prior Conviction for Washington Residential Burglary

█ Having concluded that *Johnson* applies retroactively to invalidate the residual clause, the only remaining issue is whether Mr. Rios's Washington conviction for residential burglary still qualifies as a crime of violence. Mr. Rios argues that, without the residual clause, his conviction for residential burglary no longer qualifies and accordingly, he is no longer eligible for an enhanced Base Offense Level pursuant to U.S.S.G. § 2K2.1(a)(4)(A). The government offers no response.

█ In *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Supreme Court adopted a "formal categorical approach" for determining whether a defendant's prior convictions qualify as predicate offenses under the ACCA. This approach requires a sentencing court to " 'look only to the statutory definitions'—*i.e.*, the elements—of a defendant's prior offenses, and *not* 'to the particular facts underlying those convictions.' " *Descamps v. United States*, ―― U.S. ――, 133 S.Ct. 2276, 2283, 186 L.Ed.2d 438 (2013) (emphasis in original) (quoting *Taylor*, 495 U.S. at 600, 110 S.Ct. 2143). If the categorical approach reveals that the elements of the prior conviction are the same as or narrower than the elements of the generic offense, then the statute is a categorical match, and every conviction under that statute qualifies as a violent felony. *Lopez–Valencia v. Lynch*, 798 F.3d 863, 867 (9th Cir.2015). But where a statute is "overbroad," meaning that it criminalizes conduct that goes beyond the elements of the generic offense, a Court must inquire further and determine whether the statute is divisible or indivisible. *Id.* If the statute is indivisible, the inquiry ends, "because a conviction under an indivisible, overbroad statute can *never* serve as a predicate offense." *Id.* (emphasis in original) (quoting *Medina–Lara v. Holder*, 771 F.3d 1106, 1111 (9th Cir.2014). If a statute is both overbroad and divisible, however, the Court may employ what has been termed the "modified categorical approach," and consider a limited category of documents from the defendant's record of conviction to determine what elements of the divisible statute he was convicted of violating. *Lopez–Valencia*, 798 F.3d at 867. Under the modified categorical approach, a prior conviction qualifies as a predicate offense only if those documents reveal that the defendant was convicted of a version of the crime that fits within the definition of the generic offense. *See Descamps*, 133 S.Ct. at 2284.

█ A statute is divisible where it "lists multiple, alternative elements, and so effectively creates 'several different ... crimes.' " *Id.* at 2285 (quoting *Nijhawan v. Holder*, 557 U.S. 29, 41, 129 S.Ct. 2294, 174 L.Ed.2d 22 (2009)). Where a statute lists

---

3. This conclusion is consistent with every other Ninth Circuit district court decision on the issue this Court could locate. *See, e.g., United States v. Dean*, No. 13–CR–137–SI, 169 F.Supp.3d 1097, 2016 WL 1060229 (D.Or. March 15, 2016); *Gibson v. United States*, No. 15–CV–5737–BHS, 2016 WL 3349350 (W.D.Wash. June 15, 2016); *Gilbert v. United States*, No. 15–CV–1855–JCC, 2016 WL 3443898 (W.D.Wash. June 23, 2016); *United States v. Bercier*, No. 13–CR–102–RMP, 192 F.Supp.3d 1142, 2016 WL 3619638 (E.D.Wash. June 24, 2016); *United States v. Jordan*, No. 11–CR–195–EFS, 2016 WL 3965212 (E.D.Wash. July 22, 2016); *United States v. Snead*, No. 12–CR–649–CW, 2016 WL 4091548 (N.D.Cal. August 2, 2016); *United States v. Teeples*, No. 02–CR–45–M–DWM, 2016 WL 4147139 (D.Mont. August 3, 2016).

alternative means of committing the crime, however, rather than alternative elements, a statute is considered indivisible. *See Mathis v. United States,* — U.S. —, 136 S.Ct. 2243, 2251–56, 195 L.Ed.2d 604 (2016). As *Mathis* explains, the questions of whether a particular statute is divisible and lists alternative elements, or is indivisible and lists alternative means, hinges on whether the jury must agree on the relevant fact(s). *Id.* at 2248 ("Elements are the constituent parts of a crime's legal definition .... At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant."). If the relevant state law makes clear that a defendant can be found guilty only if the jury unanimously agrees on which one of a statute's listed alternatives the defendant committed, the statute lists alternative elements, and is divisible. *Lopez–Valencia,* 798 F.3d at 868–69. If on the other hand, the jury need not unanimously agree on which alternative the defendant employed to find him guilty, the statute lists alternative means and is indivisible.[4] *Id.*

At the time Mr. Rios was sentenced, Washington's residential burglary statute provided: "[a] person is guilty of residential burglary if, with intent to commit a crime against person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle." WASH. REV. CODE § 9A.52.025(1). Dwelling was defined as "any building or structure though movable or temporary, or a portion thereof, which is used or ordinarily used

by a person for lodging." WASH. REV. CODE § 9A.04.110(7). The term "building" includes:

... in addition to its ordinary meaning, any dwelling, fenced area, vehicle, railway car, cargo container, or any other structure used for lodging of persons or for carrying on business therein, or for the use, sale, or deposit of goods; each unit of a building consisting of two or more units separately secured or occupied is a separate building.

WASH. REV. CODE § 9A.04.110(5).

As the statutory definition of residential burglary makes clear, none of the conduct criminalized by WASH. REV. CODE § 9A.52.025(1) has "as an element the use, attempted use, or threatened use of physical force against the person of another." *See* U.S.S.G. § 4B1.2(a)(1). A defendant need not have used, attempted to use, or threatened to use physical force against another person for the jury to reach a verdict of guilty—he need only have entered or remained unlawfully in a dwelling other than a vehicle with the intent to commit a crime therein. Accordingly, with the residual clause invalidated, Mr. Rios's conviction for residential burglary is a crime of violence only if it is equivalent to generic burglary of a dwelling under the enumerated offenses clause contained in U.S.S.G. § 4B1.2(a)(2).

"Generic" burglary is defined as an "unlawful or unprivileged entry into, or re-

---

4. The *Lopez–Valencia* court provides an excellent example that explains the intricacies of determining whether a particular statute is divisible or indivisible:

Imagine a statute that criminalizes assault with "a gun or an axe." A federal law imposes penalties only for defendants previously convicted of "gun offenses." If state law makes clear that a defendant can be found guilty only if all twelve jurors agree that the defendant used a gun or if all twelve jurors agree the defendant used an

axe, the statute has alternative elements and is divisible. The court may then apply the modified categorical approach to determine whether the defendant was accused and convicted of using a gun or an axe. If, however, the defendant can be convicted with six jurors believing the defendant used a gun and six jurors believing the defendant used an axe, the statute lists alternative means and is indivisible.

*Lopez–Valencia,* 798 F.3d at 869.

maining in, a building or structure, with intent to commit a crime." *Descamps*, 133 S.Ct. at 2283. In the context of U.S.S.G. § 4B1.2(a)(2), the structure or building must also be a dwelling to qualify under the enumerated offenses clause. *See United States v. Wenner*, 351 F.3d 969, 972 (9th Cir.2003). As *Wenner* makes clear, Washington's residential burglary statute is categorically overbroad with respect to the building requirement because "[s]ome things that are dwellings (*e.g.*, fenced areas, railway cars, and cargo containers) are not buildings or structures under federal law, and so cannot support a conviction for generic 'burglary' [of a dwelling]." *See Wenner*, 351 F.3d at 972–73 ("[W]e agree with Wenner that the Washington statute is broader than federal law; burglarizing a fenced area that doubles as a dwelling is a residential burglary under Washington law, but not a 'burglary' under *Taylor*, and thus not a burglary of a dwelling under the Guidelines.").

WASH. REV. CODE § 9A.52.025(1) is also indivisible with respect to the building requirement. Although jurors must decide unanimously that a defendant entered or remained unlawfully in one of the areas Washington defines as a "building," they need not unanimously agree on which kind of "building." *See* 11A Wash. Prac., Pattern Jury Instr. Crim WPIC 60.02.02 ("To convict the defendant of the crime of residential burglary, each of the following elements of the crime must be proved beyond a reasonable doubt: (1) that on or about (date), the defendant entered or remained unlawfully in a dwelling . . . ."); *see also* 11 Wash. Prac., Pattern Jury Instr. Crim WPIC 2.08 ("Dwelling means any building or structure *[, though movable or temporary,] [, or a portion thereof,]* that is used or ordinarily used by a person for lodging."); 11 Wash. Prac., Pattern Jury Instr. Crim WPIC 2.05 ("Building, in addition to its ordinary meaning, includes any [dwelling] [fenced area] [vehicle] [railway car] [cargo container]. [Building also includes any other structure used *[mainly] [for lodging of persons] [for carrying on business therein] [for the use, sale or deposit of goods]* ] . . . ."). Because WASH REV. CODE § 9A.52.025 is both overbroad and indivisible, a conviction for residential burglary in Washington cannot qualify as a crime of violence. *See Lopez–Valencia*, 798 F.3d at 867 ("[A] conviction under an indivisible, overbroad statute can *never* serve as a predicate offense." (emphasis in original)).

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant Christobal Miguel Rios's 28 U.S.C. § 2255 Motion to Vacate Sentence and for Resentencing, **ECF No. 49**, is **GRANTED.**

2. Defendant's sentence imposed pursuant to U.S.S.G. § 2K2.1(a)(4)(A), **ECF No. 41**, is **VACATED.**

3. Defendant will be resentenced on the underlying conviction on **October 4, 2016, at 10:00 a.m.**, in **Spokane, Washington.** Defendant must be present at the resentencing hearing.

4. An expedited Amended Presentence Investigation Report shall be prepared within thirty (30) days of the date of this Order reflecting this Court's ruling and without application of the offense level enhancement contained in U.S.S.G. § 2K2.1(a)(4)(A) based on Defendant's prior conviction for residential burglary. Any objections or memorandum regarding sentencing shall be filed within fourteen (14) days of the filing of the Amended Presentence Investigation Report. Probation shall file its recommendations to the Court no later than seven (7) days prior to Defendant's resentencing.

5. The U.S. Marshals Service is **DIRECTED** to transport Defendant to Spokane, Washington for his resentencing.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and forward copies to counsel, U.S. Probation, and the U.S. Marshals Service.